LEO GREENBERG et al., Plaintiffs, *v.* CITY OF NEW ROCHELLE et al., Defendants.

Supreme Court, Special Term for Trials, Westchester County, January 26, 1954.

*Harold D. Romanow* and *Sol Rubin* for plaintiffs.

*Murray Fuerst, Corporation Counsel,* for City of New Rochelle and another, defendants.

*Richard P. Donovan* for Wykagyl Country Club, defendant.

*Daniel Danziger* for Wykagyl Club Apartments, Inc., defendant.

COYNE, J. In this action plaintiffs seek a judgment declaring the invalidity of a certain ordinance, designated No. 109, adopted by the city council of the City of New Rochelle on May 18, 1953, and enjoining the issuance of building permits

authorizing the erection of an apartment house pursuant to the said ordinance. The ordinance amended the Zoning Ordinance of the City of New Rochelle by changing the classification of a portion of property owned by the defendant Wykagyl Country Club (hereinafter referred to as the Club) from single-family residential ('' R–1 '') to multi-family ('' R–5 '').

Plaintiffs are the owners of single-family residences in the general vicinity of the property affected by the rezoning. The plaintiff residing nearest to the subject property (by public road) is located 1,160 feet away. The plaintiff residing farthest from the subject property is located 1,980 feet away.

The property rezoned is a portion of a larger tract owned by the Club, situated on the easterly side of North Avenue, at or near Quaker Ridge Road, in the city of New Rochelle. The entire tract owned by the Club consists of approximately 177 acres, operated as a golf course. The club property has a total frontage on North Avenue of approximately 1,414 feet. Prior to the amendment of the ordinance herein all of the Club property was zoned '' R–1 ''.

The subject property is situated on the northwesterly corner of the Club property. It has frontage on North Avenue of 300 feet and a depth of 500 feet. The adjacent property north of the subject property is zoned '' R–5 '' (multi-family). It is improved with a group of apartment buildings known as Wykagyl Garden Apartments, consisting of five building units containing 219 apartments. Immediately north of the Wykagyl Garden Apartments, and extending for approximately 600 feet to Quaker Ridge Road, in an area zoned '' C '' (business), are stores of various types, including a bar, grill and restaurant, stationery and cigars, barbershop, wine and liquor, delicatessen, food shops and hardware. Proceeding easterly along Quaker Ridge Road a distance of approximately 1,500 feet, are three acres of land zoned '' C–1 '' (restricted business); then an area zoned '' R–5 '' (multi-family); and finally an area zoned '' M '' (industry). In this latter area are located a gas station, a lumberyard and a deep freeze warehouse. Crossing North Avenue, and to the west of the subject property, are located the First Methodist Church, and cemeteries connected therewith. Also west of the subject property, and proceeding northerly on North Avenue, are located the Roosevelt School; a large plot of unimproved land, presently zoned for a '' Designed Shopping Center ''; and a parcel zoned '' C–1 '' (restricted business). This latter parcel is improved by a bank building with a parking area and drive-in facilities. Except to the extent

indicated, the other property around the perimeter of the Club property is zoned '' R–1 '' and '' R–1a '' (single-family residential).

The ordinance challenged in the present action provides as follows:

'' Be it ordained by the City of New Rochelle. Section 1. The Zoning Map, forming a part of the Zoning Ordinance of the City of New Rochelle, is hereby amended so that the property known as a portion of Block 2400, Lot 1, on the easterly side of North Avenue, presently zoned ' R–1' (one-family) be changed in classification to ' R–5 ' (Multi-family); said portion being more specifically described as follows: Northwesterly corner of the property of the Wykagyl Country Club, being a parcel 300' x 500', having a frontage on North Avenue of 300', as shown on the map entitled ' Map of Property on the Easterly side of North Avenue, now or formerly belonging to the Westchester Country Club, New Rochelle, New York,' dated, January 19, 1953, by George W. Godfrey, which map is on file in the office of the City Clerk.

'' Section 2. This ordinance shall take effect thirty days after its adoption.

'' Authenticated and certified this 18th day of May, 1953

STANLEY W. CHURCH, Mayor

CHARLES U. COMBES, City Clerk ''.

It is the contention of the plaintiffs that the ordinance is piecemeal legislation, and '' spot zoning '', adopted without regard to a comprehensive plan for the general welfare of the community. As will hereinafter appear, the law and facts do not support this contention.

It is indeed trite to observe that zoning ordinances must be designed to promote the public health, safety and general welfare; and made with reasonable consideration to the character of the district, its peculiar suitability for particular uses, and the direction of building development. These elements must be applied by the municipal authorities in accord with a well-considered and comprehensive plan. (*Vernon Park Realty* v. *City of Mount Vernon,* 122 N. Y. S. 2d 78, affd. 282 App. Div. 890.)

The principles of law governing the case at bar were recently expressed by the Court of Appeals in *Rodgers* v. *Village of Tarrytown* (302 N. Y. 115, 121). The court summarized the pertinent principles of law as follows: '' While stability and

regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it. In that connection, we recently said (*Shepard* v. *Village of Skaneateles,* 300 N. Y. 115, 118): Upon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. ' If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control '. (*Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 388; see, also, *Town of Islip* v. *Summers Coal & Lbr. Co.,* 257 N. Y. 167, 169, 170; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288, 296–297.) ''

Under this pronouncement of the Court of Appeals, clearly the scope of any inquiry by this court into the validity of the legislative enactment is limited and circumscribed. The burden rests upon the one assailing the ordinance to establish that the judgment of the legislative body was arbitrary and unreasonable. This cardinal principle is now firmly entrenched in the law. The classification of property and the uses thereof is a matter of legislative and not judicial action, and the court will not intervene and substitute its judgment for that of the legislative body where such classification is fairly debatable. (*Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115, 121, *supra*; *Brown* v. *Village of Owego,* 260 App. Div. 328, affd. 284 N. Y. 655; *Matter of Stillman* v. *Board of Standards & Appeals,* 222 App. Div. 19, affd. 247 N. Y. 599; *Matter of McIntosh* v. *Johnson,* 211 N. Y. 265; *Matter of Ward* v. *Murdock,* 247 App. Div. 808; *Matter of Dunne* v. *Walsh,* 235 App. Div. 72; *Bond* v. *Cooke,* 237 App. Div. 229; *Village of Old Westbury* v. *Foster,* 193 Misc. 47; *Radice* v. *New York,* 264 U. S. 292.)

The authority conferred by statute to divide the municipality into districts and to regulate buildings and structures therein implies the power to change districts from time to time as the same becomes necessary. (*Prescott* v. *Pierce,* 130 Misc. 63; General City Law, § 20, subds. 24, 25; §§ 28, 83.)

The subject of " spot zoning " was also considered in the *Rodgers* case (*supra,* p. 123). There the court defined spot zoning " as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners (citing cases) ". The relevant inquiry in cases of alleged spot zoning is whether the zoning was accomplished for the benefit of the individual owner, rather than pursuant to a comprehensive plan for the general welfare of the community. The expression " spot zoning " does not bear magical import. An ordinance is not to be labeled spot zoning merely because it singles out and affects one parcel of property. The true test is whether the change is part of a well-considered and comprehensive plan. (*Shepard* v. *Village of Skaneateles,* 300 N. Y. 115.)

Upon all of the proof contained in the present record, the plaintiffs have wholly failed to establish that the action of the city council of New Rochelle, in rezoning the subject property to an " R–5 " classification, was arbitrary. Clearly, the change in the present instance was not " spot zoning ". Quite to the contrary, this court is satisfied that the reclassification was made pursuant to the well-considered and comprehensive plan set forth in the basic zoning ordinance, and in conformity with sound zoning principles. Without reviewing the evidence in detail, it is sufficient to note that the subject property has frontage on North Avenue of approximately 300 feet; that North Avenue is a main artery of traffic, being the longest north-south thoroughfare in the city of New Rochelle; that building development in recent years on North Avenue in the immediate vicinity of the subject property has taken a commercial trend; that the property adjacent to the subject property on the north is zoned " R–5 " (multi-family); that such adjacent property is improved by a group of buildings known as Wykagyl Garden Apartments, consisting of five separate building units containing in the aggregate 219 apartments; that in the immediate vicinity of the subject property, to the north, northeast, west, and northwest are properties zoned respectively as " C " (business), " C–1 " (restricted business), " R–5 " (multi-family),

" M " (industry), " D. S. C." (designed shopping center), and " C " (business). Further, as was intimated in the *Rodgers* case, the legislative body was entitled to find the need for additional housing facilities in the area, and the peculiar adaptability of the subject property for this purpose.

The rezoning here is in harmony with the orderly growth of the community, and with the pattern of zoning in the area. This is not an instance where an island has been created in an essentially different district, or where a comparatively small area is singled out and placed in a district, the use of which is different from the use permitted in the district. Here, the rezoning was merely an extension of the existing " R–5 " classification, and is in keeping with the character of the immediate neighborhood. The well-considered or comprehensive plan from which the city council may not deviate is nothing more than a plan to control and direct the use and development of property within the municipality by dividing it into districts according to the present and potential use of the properties involved. The rezoning in the present instance has not disrupted the general plan. The integrity of the basic ordinance has been preserved.

In this connection, the court has taken note of the statement set forth on page " 8 " of the brief of plaintiffs' attorney to the effect that the legislation is an attempt to change North Avenue by piecemeal legislation from one-family residential to apartment house use, and that one day the entire golf course belonging to the defendant, Wykagyl Country Club, may be rezoned for apartment houses. Such a statement is, of course, highly speculative and argumentative. Such an eventuality is without the orbit of the determination made herein. The court cannot surmise as to some future development, or prospective use which may be made of the remaining property of the Wykagyl Country Club. However, it is most significant to this court that the rezoning in question is confined to a parcel fronting on the easterly side of North Avenue, and contiguous to a parcel already zoned " R–5 " (multi-family). Plaintiffs' apprehension as to further expansion of the " R–5 " zone southerly on North Avenue seems unfounded, particularly in view of the natural buffer zone provided by the clubhouse of the Wykagyl Country Club situated south of the subject property.

Plaintiffs further claim that the construction of a large apartment building on the subject property will create a traffic

hazard is likewise without merit. Traffic problems are within the domain of the police and not the zoning authorities. (*Huntley Estates* v. *Town of Eastchester,* 121 N. Y. S. 2d 504, 508; *Matter of Brooklyn Parking Corp.* v. *Cannella,* 193 Misc. 811; *Property Owners Assn. of Garden City Estates* v. *Board of Zoning Appeals of Inc. Village of Garden City,* 123 N. Y. S. 2d 716.)

Nor have plaintiffs, in the opinion of the court, established that they will suffer detriment by reason of the rezoning. As noted, their respective properties are remotely located in respect to the site in question. While not decisive, adequate proof of detriment has not been adduced. (*Isen Contr. Corp.* v. *Town of Oyster Bay,* 279 App. Div. 1010.)

The remaining contentions advanced by plaintiffs have been examined and found to be without substance. Plaintiffs have failed to sustain the burden imposed upon them by law.

Judgment granted in favor of defendants dismissing the complaint, with costs. Settle decision and judgment on notice.