George M. Fauelli, J.
This is an action for a declaratory judgment wherein plaintiff seeks to hold the zoning ordinance of the Village of Searsdale unconstitutional and void and to declare that it is confiscatory, unreasonable and void insofar as it affects plaintiff’s property, which was reclassified and upgraded from a Business B District to a Residence B District.
Before turning to the pivotal questions upon which this decision hinges, the court must perforce pass upon plaintiff’s preliminary charge that the legislation which carried the aforementioned rezoning into effect was improperly and illegally enacted.
The record indicates that since 1922, both as lessee and owner, plaintiff has occupied the property in question (now consisting *291 of 3.401 acres in the Heathcote section of the village) as a building supply yard with certain buildings and improvements thereon in a business zone district. However, in October, 1955, by amendment to the Building Zone Ordinance of the village, this property was placed in a newly created Residence B District which no longer permits the operation of a business such as plaintiff’s. Thus did the use of the property as a building supply yard become a nonconforming use and no one questions the fact that plaintiff now lawfully uses, and that it may continue to operate a building supply yard as it presently exists.
Plaintiff contends that in adopting the rezoning by a two-thirds vote of the members of the Board of Trustees (5 of the 7 members voting — 2 members abstaining), defendant village failed to comply with the appropriate provisions of the Village Law. Section 179 of the Village Law, as it existed in October, 1955, provided, among other things, that in case of protest against a proposed change in zoning signed by the owners of 20% or more of the area of the land included in the proposed change ‘ ‘ such amendment shall not become effective except by the favorable vote of all the members of the board of trustees ”. Concededly, plaintiff did file a written protest and it did constitute more than 20% of the area involved by the creation of the new Residence B District. Plaintiff further charges that in an effort to overcome the said unanimous requirement (the inference being that no such unanimous vote could be obtained), there was on June 13,1955 — prior to the passage of the amendatory ordinance of October, 1955 — enacted Local Law No. 4 which amended section 179 of the Village Law insofar as it applied to the Village of Scarsdale to the extent of substituting a favorable vote of two thirds of the members of the Board of Trustees instead of the afore-mentioned unanimous approval in cases where protests were filed. Plaintiff urges that said Local Law was invalid, null and void and unconstitutional, and hence the rezoning amendment of October, 1955 must likewise fall. While it recognizes the power of a village under the Village Home Rule Law to adopt, amend and repeal local laws, nevertheless, it challenges any such authority to enact local laws which may contravene a general law such as the Village Law which deals with all villages of the same class in this State.
Defendant’s position with respect to such alleged irregularity and invalidity is twofold. First, it contends that it has the power to amend the Village Law as afore-mentioned by virtue of subdivision 4 of section 11 of the Village Home Rule Law, and *292 second, that assuming arguendo that such Local Law No. 4 is held to be ineffective, nevertheless, the rezoning of plaintiff’s property was subsequently made effective by the enactment of the new Scarsdale Village Code on February 26, 1957, which was admittedly adopted by the unanimous vote of all the members of the Board of Trustees. Such code specifically provides that1 ‘ all ordinances of the Village heretofore enacted are hereby repealed ” (ch. 1, art. 1, § 1-1-2). Defendant points to the fact that since such code repealed all prior ordinances of the village and enacted a completely new code of ordinances, including the zoning provisions applicable to plaintiff’s property, then, the zoning restrictions now complained of by plaintiff in this action were in fact enacted by unanimous vote.
The court has carefully examined the appropriate provisions of the State Constitution, the Village Law, the Village Home Rule Law, the General Construction Law and the Scarsdale Village Code, and it is of the opinion that the contentions raised by plaintiff with respect to this preliminary question are without merit and must be overruled. The effect of the adoption of the Scarsdale Village Code was to repeal, among others, the October, 1955 amendment and to enact identical zoning restrictions on plaintiff’s property. Hence, finding it unnecessary to pass upon the validity of the 1955 amendment (although there seems to be authority for such amendment by virtue of Village Home Rule Law, § 11, subd. 4), the court is of the view that at the time of the commencement of this action in the Fall of 1957 the zoning of plaintiff’s property was the result of the Scarsdale Village Code unanimously adopted on February 26, 1957, and not from the amendment to the Building Zone Ordinance enacted in October, 1955. The question of whether the Local Law No. 4 was legally adopted has now become academic since it is conceded that the Scarsdale Village Code was unanimously adopted by the Board of Trustees. The rights of this plaintiff must be determined on the basis of the law as it exists today (see Strauss v. University of State of N. Y., 2 N Y 2d 464, 467 and cases cited therein). While it is true that in some instances provisions of law repealing a prior law which are substantial re-enactments of provisions of the prior law, are to be construed as a continuation of such provisions of such prior law and not as new enactments (General Construction Law, § 95), yet, in this case, said section is of no help to plaintiff since its reliance thereon only creates an inconsistency. If the 1955 amendment was void, then there was no “ continuance ” *293 of a valid restriction on plaintiff’s property; on the other hand, if the 1955 amendment was validly enacted, then it does not matter whether the code constituted a continuation or not. The result is the same.
In this connection, it is interesting to note that in 1956, effective April 17, 1956, the Legislature of this State did in fact amend section 179 of the Village Law so as to reduce the aforementioned unanimous approval of the members of the board of trustees to a favorable vote of only three fourths (L. 1956, ch. 759).
This case has been presented by able and skillful counsel who have also submitted learned briefs. To repeat — plaintiff charges that the rezoning and conversion of its property from a business to a residential use is unreasonable, confiscatory and unconstitutional despite the fact that it continues to enjoy, and there is no evidence of any imminent threat to take away, its present right to use and continue to use its property for a building supply yard as a nonconforming use.
The decisions involving the principles of zoning, rezoning and “ spot zoning ” are many. Although much has been written on the subject by textwriters such as Rathkopf (The Law of Zoning and Planning), Metzenbaum (Law of Zoning), Yokley (Zoning Law and Practice) and Bassett (Zoning), yet, in the final analysis, it is not the law which is difficult of understanding or application but rather the application of the law to the ever-changing and diversified factual situations presented in each case. There is no set pattern to which the law may undeviatingly be applied in all eases. Each case must be decided upon its own facts and so must the application of legal principles mould to the facts. Discussing principles and burdens disconnected with the facts often leads to confusion. Facts must come first before the court should apply the law.
Counsel for the respective parties are well cognizant of the ever-increasing number of decisions rendered on this subject by our Court of Appeals, Appellate Divisions and lower courts and in their briefs they have delineated the various principles of law therein enunciated. For example, it has been said time and time again that zoning and rezoning are legislative functions and that zoning ordinances or amendments thereto are presumed to be valid. The burden of proving the invalidity of a zoning ordinance or an amendment thereto is upon the party who assails its validity. That party must prove by a fair preponderance of the credible evidence that the zoning determination of the *294 legislative body was arbitrary, capricious or unreasonable. If the validity of the legislative classification for zoning purposes is fairly debatable, the judgment of the legislative body is conclusive and beyond interference by the courts (Euclid v. Ambler Co., 272 U. S. 365; Rodgers v. Village of Tarrytown, 302 N. Y. 115; Shepard v. Village of Skaneateles, 300 N. Y. 115). Zoning ordinances may be amended without proof of mistake in the original enactment or a change in the character of the property involved in the reclassification (Levitt v. Incorporated Village of Sands Point, 6 A D 2d 701; Rodgers v. Village of Tarrytown, supra; Penataquit Assn. v. Furman, 283 App. Div. 875). Proof that property could be more profitably used for business than for residential purposes is insufficient to warrant a declaration that a zoning- ordinance is confiscatory and unconstitutional (Shepard v. Village of Skaneateles, supra; Ulmer Park Realty Co. v. City of New York, 270 App. Div. 1044, affd. 297 N. Y. 788; Matter of Wulfsohn v. Burden, 241 N. Y. 288; Matter of Fox Meadow Estates v. Culley, 233 App. Div. 250, affd. 261 N. Y. 506). Municipalities are not required to zone property so as to produce the highest return for the owner (Matter of Wulfsohn v. Burden, supra; Brown v. Village of Owego, 260 App. Div. 328, affd. 284 N. Y. 655; Kraft v. Village of Hastings, 258 App. Div. 1060, affd. 285 N. Y. 639; Osborne v. Village of East Hampton, 61 N. Y. S. 2d 142, affd. 271 App. Div. 837; Mallinson v. Village of Tarrytown, 14 Misc 2d 5). “ Spot zoning ” is the very antithesis of planned zoning since it is the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners. If, on the other hand, an ordinance is enacted with a comprehensive zoning plan, it is not “ spot zoning ” even though it singles out and affects one small plot or creates areas or districts devoted to a different use (Rodgers v. Village of Tarrytown, supra). The true test is whether the change is part of a well-considered and comprehensive plan (Shepard v. Village of Skaneateles, supra; Greenberg v. City of New Rochelle, 206 Misc. 28, affd. 284 App. Div. 891) since “ ‘ what is best for the body politic in the long run must prevail over the interests of particular individuals’” (Rodgers v. Village of Tarrytown, supra, p. 126), and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality (Wiggins v. Town of Somers, 4 N Y 2d 215).
Despite the afore-mentioned liberality afforded municipalities, the law is also well settled that an ordinance which permanently *295 so restricts the use of property that it cannot be used for any reasonable purpose or which deprives the owner of the beneficial use of his property, goes beyond the bounds of regulation and must be recognized as a taking of property. This principle, too, has its limitations since the situation might be different where it appears that within a reasonable time the property can be put to a profitable use. This temporary inconvenience or even hardship of holding unproductive property might then be compensated by ultimate benefit to the owner or, perhaps, even without such coinpensation, the individual owner might be compelled to bear a temporary burden in order to promote the public good (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).
In analyzing the factual situation in the case at bar, it seems almost useless to discuss, apply, or distinguish any of the aforementioned principles of law because of one highly crucial factor, and that is the fact that plaintiff’s property has been used, is now being used, and may in the future be continued to be used as a building supply yard because of its nonconforming status. Concededly, plaintiff has a nonconforming use and it has made no factual showing in this case to indicate any unjustifiable interference by the defendant with the present enjoyment of its property. Certainly, plaintiff must realize that zoning is by no means static and that a property owner in a particular zone or use district enjoys no eternally vested right to that classification if the public interest demands otherwise (Rodgers v. Village of Tarrytown, supra). In a sense, plaintiff charges ‘ ‘ spot zoning ’ ’ by the creation of the Residence B District and the reclassification of its property. In most cases, municipalities are criticized because of a singling out of a small parcel of land for use classification totally different from that of the surrounding area for the benefit of the owner of such property and to the detriment of other owners (Rodgers v. Village of Tarrytown, supra). In this case, plaintiff property owner charges that its property has been sacrificed for the benefit of the neighborhood and the surrounding property owners. But, here again, the court may not ignore realities, and it is of the opinion that the primary difficulty with plaintiff’s entire theory in this case is that for the present it is fully protected by the nonconforming use which it enjoys (People v. Miller, 304 N. Y. 105; Town of Somers v. Camarco, 308 N. Y. 537). This court is unable to reach, nor does it now pass upon the question whether the rezoning of plaintiff’s property was “ spot zoning whether it was a part of a well-considered and comprehensive *296 plan on the part of the Village of Scarsdale; whether it so restricted the use of plaintiff’s property that it cannot be used for any reasonable purpose excepting business uses; or whether such reclassification goes beyond the bounds of regulation and deprives plaintiff of the beneficial use of its property. Bather, the court must decide this case on the facts as they presently exist.
The record fails to reveal any controversy with the Village of Scarsdale as to plaintiff’s present right to use its premises for a building supply yard. Under such circumstances, how can it be said that plaintiff is presently aggrieved. In the absence of proof of such facts, it is difficult to see how plaintiff has been deprived in any manner of the use of its property (cf. Headley v. City of Rochester, 272 N. Y. 197). It would seem that before this court should even consider the question of whether the Village of Scarsdale could under the police power restrict, without compensation, the use of plaintiff’s property (as plaintiff contends) there should be proof at least that the code is in some manner interfering with or diminishing the value of the present property rights of plaintiff.
Unquestionably, plaintiff is deeply concerned but its fears and anxieties concern themselves not with the present but rather with the future. While it recognizes the nonconforming status of its property, yet, plaintiff is frank to admit and it envisages the day when it may be “ put out of business on comparatively short notice ” because of the impact of the recent decision of the Court of Appeals in Matter of Harbison v. City of Buffalo (4 N Y 2d 553) wherein it was held (by a divided court) that no owner of land devoted to a prior nonconforming use has the right to continue such use in perpetuity, and that a municipality may elminate such pre-existing nonconforming use where the benefit to the public has been deemed of greater moment than the detriment to the property owner because of the changes in the neighborhood over the course of time, provided the time within which such owner is required to so liquidate and ‘£ amortize ” his investment is reasonable in the light of the nature of the business, the improvements erected on the land, the character of the neighborhood, and the detriment caused the property owner. In the resolution of the question presented in the instant case, it is not necessary for the court to reach or pass upon the problem now confronting plaintiff in this latter regard. This court is not now called upon to nor can it foretell the fate of plaintiff’s property. For the present, and, insofar as the record is concerned, plaintiff apparently is using its property profitably *297 as a building supply yard. True, plaintiff has produced evidence which might be sufficient to sustain a finding that this property could not be used practically or profitably for residential purposes, i.e., garden-type apartments or private homes, and that the property was suitable, on the other hand, for a shopping center or retail stores, yet, such evaluation and comparison is not the issue in this case since plaintiff has offered no testimony either that it intends to abandon its present nonconforming use or that it seeks to improve the property with retail stores or a shopping center. It is most difficult, if not impossible, for this court to predict what legislative action, if any, may be taken in the future by the Village of Scarsdale insofar as it may affect plaintiff’s property — either favorably or unfavorably. When and if that day should come, then plaintiff can, if it be so advised, seek the aid of the courts. Eight now-— there is no controversy between the parties and no factual showing has been made to sustain a finding that there has been any unreasonable interference with or confiscation of any of plaintiff’s present property rights.
The three cases heavily-relied upon by plaintiff’s counsel in his brief to substantiate his position are all factually distinguishable from the case at bar and are, consequently, inapplicable. In Matter of Eaton v. Sweeny (257 N. Y. 176) and Arverne Bay Constr. Co. v. Thatcher (278 N. Y. 222, supra) the Court of Appeals dealt with vacant land. In all three cases the property owners sought to use their land for particular purposes. Eaton sought to use his land for a lunch wagon and restaurant and contended that the restriction of his property for a private dwelling or a boarding house would deprive him of all reasonable and beneficial use of his land. In order to allow him the opportunity to prove such deprivation, the Court of Appeals sustained an alternative order of mandamus and directed a trial of the issues therein presented. The Arverne Bay Construction Company’s land was originally situated in an “ unrestricted zone ’ ’ and thereafter, by amendment, was placed in a residential zone. There, too, the plaintiff sought to use its land for a gasoline service station and contended that its property could not be used properly or profitably for any purpose permitted in a residence zone. The Court of Appeals was careful to point out that the plaintiff conclusively showed at the trial that at no time since the amendment of the zoning regulation (a period of 9 or 10 years) could its property be profitably used for residential purposes. Therefore, under those facts the court properly held that the zoning ordinance as *298 applied to plaintiff’s property amounted to a permanent restriction upon the reasonable use of the land in question. Judge Lehman, in writing for the court, was however careful to note that a period of nine years was more than a reasonable period of time and that it was quite obvious that the restriction placed upon the plaintiff’s land was not a temporary one (in which case a property owner “ might be compelled to bear a temporary burden in order to promote the public good” [p. 232]), but rather was something permanent and thus constituted a taking of land prohibited by the Constitution of the United States and by the Constitution of the State.
Finally, in the case of Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493) the court dealt with a parking area which the plaintiff sought to use so as to permit buildings for offices and stores after an unsuccessful attempt had been made for a variance to permit the erection of a retail shopping center. There, the land in question was located in the heart and middle of a highly developed business district and as such constituted an island completely surrounded by business buildings. The Court of Appeals overruled the city’s attempted justification of the rezoning, to wit: ‘£ congested traffic and parking conditions ’ ’ (p. 498), and properly held that the Zoning Ordinance which reclassified the plaintiff’s property from a business zone to a residential zone, (even though the parking of automobiles was continued as a valid nonconforming use) and a later amendment which prohibited the use of the property for any purpose except the parking and storage of automobiles, a service station within the parking area and the continuance of prior nonconforming uses, were both unconstitutional and void. The court found that there was no reasonable basis for restricting this land to a residential use and it cast aside the municipality’s alleged justification for the ordinance and amendment. Becognizing that the property owner enjoyed a nonconforming use, yet, the court found that since the ordinance and amendment prohibited any other use of the property, they did not constitute a reasonable exercise of the police power. The court further found that this land —££ a residential island in a sea of business ” — completely surrounded by business buildings — had “no possibilities for residential use” (p. 499) and that the ordinance and amendment permanently precluded the use of the property for which it was most suitably adapted.
In applying the principles of law laid down by the Court of Appeals in the afore-mentioned three cases this court is unable to find that they are applicable to the facts in this case. To begin *299 with — the plaintiff at bar seeks no affirmative use of its property (other than its present use) either now or in the future. It has lawfully occupied the property as a going business for the past 35 years. Plaintiff does not now seek to use its property for offices or stores (Vernon Park Realty); for a gasoline service station (Arverne Bay Constr. Co.); nor for a lunch wagon or restaurant (Eaton). Rather, it is content to remain as a building supply yard and has presented no evidence that it intends now or in the near future to make any other use of its property. The fact that a shopping center or stores would be profitable is of no consequence at this point.
The rules laid down by the Court of Appeals in the aforementioned cases must be applied to the varying circumstances of each case and the principles and burdens therein enunciated should not be disconnected with the peculiar facts in the particular case.
In the light of the afore-mentioned, this court concludes that plaintiff has failed to prove by a fair preponderance of the credible evidence the allegations of its complaint. Accordingly, the complaint is dismissed, but without costs.
The foregoing constitutes the decision of this court in accordance with the provisions of section 440 of the Civil Practice Act. All exhibits may be obtained from the Clerk of Special Term, Part II.
Settle judgment on notice.