Samuel W. Eager, J.
This action attacks the validity of City of Yonkers General Ordinance No. 15-1958 which amended the General Zoning Ordinance of said city to reclassify and place in a “BA” District (a business apartment district) a parcel of 28.3940 acres of land situate on the easterly side of Central Park Avenue. Prior to the amendment, a greater portion of the parcel was restricted to residential use. The amendment had the effect of permitting the use of the parcel for department store purposes. The fact is that, following the amendment and after the commencement of this action [14 Misc 2d 535], a permit was obtained for the construction upon the parcel of a large S. Klein department store with a parking lot for some 3,000 cars; and such improvement, building and parking lot, are now substantially erected and completed.
The action was brought by a number of owners and occupants of residential properties situate in the immediate neighborhood of the subject parcel. The relief demanded in their complaint is a judgment declaring void the said General Ordinance No. 15-1958 and restraining the defendant Superintendent of Buildings from issuing a permit for the erection upon the land of any business building. As noted above, however, a permit was in fact issued for the construction upon the premises of a department store building with parking lot, and the construction thereof has been substantially completed, so that the plaintiffs now, on the submission of the case, request a mandatory injunction directing the removal of the business use improvements.
The action was tried before the undersigned without a jury at the April 1959 Special II Term of this court, and the proofs of the parties have been duly received and considered. The court has reached the conclusion that the plaintiffs have failed to make out a case for any relief, and the complaint is dismissed, without costs. The following are the findings and conclusions arrived at to support the court’s determination.

1. General Ordinance No. 15-1958 is not rendered invalid by irregularities in compliance with statutory and local law provisions having to do with the initiating of a zoning change by petition.

*324 Section 83 of the General City Law provides that the ‘ ‘ common council may from time to time on its own motion or on petition, after public notice and hearing, which hearing may be held by the council or by a committee of the council * * * amend, supplement, repeal or change the regulations and districts established under any ordinance adopted pursuant to paragraphs twenty-four and twenty-five of section twenty of this chapter.” It was further provided by chapter 722 of the Laws of 1946 of the State of New York, as amended by chapter 133 of the Laws of 1947 of the State of New York, and by Local Law No. 10 of 1953 of the said City of Yonkers, as follows: “ § 1. In the city of Yonkers, the common council may, from time to time, on its own motion or on petition of the owners of fifty per centum or more of the frontage in any district or part thereof, presented to the common council and duly signed and acknowledged requesting an amendment, supplement, change or repeal of the regulations prescribed for such district or part thereof, after public notice and hearing-, amend, supplement, change or repeal the regulations and districts established under any ordinance adopted pursuant to paragraphs twenty-four and twenty-five of section twenty of the General City Law.”
Now, generally speaking, the Common Council of a city, as a local legislative body, has the general delegated power to enact amendments to the city’s zoning ordinance, and its action pursuant to such power is not to be questioned for irregularities in the form, contents or execution of a petition by the owners of property requesting such action or in the procedures with respect to the making and presentation of such petition. Where the council accepts a petition for a zone change as the basis for action, and duly acts thereon following a public hearing and by proper vote, ‘ ‘ its motives, promptings, and procedures in making the enactment are not subject to review by the court.” (Homefield Assn, of Yonkers v. Frank, 273 App. Div. 788.)
In any event, the particular objections presented on part of plaintiffs to the petition made by the owners here are not considered to be such as to undermine the action of the council. There is, for instance, plaintiffs’ claim that the law contemplates a single petition affecting property in one particular existing district, to be signed and acknowledged by owners of a specified percentage of frontage in the district, rather than a single petition covering lands taken from a group of existing districts; and that, therefore, the petition here did not comply with the law. The petition here covered a single parcel, but it is true that such parcel was made up from lands taken from five existing districts (a “ B ” — business district, an “ MG ” — *325 multifamily residence district, and “ S-60 ”; “ S-75 ” and ‘ ‘ S-100 ’’ — single-family residence districts). The petition was signed only by the owners of lands located in the parcel sought to be rezoned. It also appears that the land taken from one or more of the existing districts and contained in the subject parcel has no street frontage. The plaintiffs, therefore, further claim that the petition was ineffective because, with respect to land located in certain of the districts, it was not signed by owners of any' land therein having street frontage.
These specific objections to the petition are not, however, considered to be valid. The law (see above) provides that the petition, which may be presented, shall be the petition of the owners of the specified percentage of the frontage in any district “ or part thereof ” to be rezoned. Thus, the law contemplates a petition for a zone change in part of a district. The fact that the part of an existing district sought to be rezoned has no existing street frontage is certainly no valid reason for precluding a change in its zone classification; and the law is not to be construed to require the impossible in connection with a request for a zone change appertaining to such a part of a district, namely, a petition by owners of land therein with street frontage where such part has no frontage.
There is also the plaintiffs’ point that the petition by the owners for the zoning change, as referred to the Planning Board and reported on by it, was not acknowledged by the owners as allegedly required by the statutory provisions as set out above. It appears that the petition upon which the council acted, when it was received and referred to the Planning Board, was signed and verified by the owners, but not acknowledged. The board approved the proposed zone change requested by such petition and duly so reported. Later, on advice of the Corporation Counsel, the property owners acknowledged an identical petition, which was filed with the council before passage of the General Ordinance effecting the zone change. Such petition, when acknowledged, was not, however, referred back to the Planning Board.
There is no specific requirement that the property owners should acknowledge the petition for a zone change before action thereon by the Planning Board. All the local ordinance required was that “ any proposed amendment, supplement or change shall be submitted to the City Planning Board for report and recommendation prior to any action taken thereon by the Common Council.” In my opinion, the Planning Board was fully authorized to proceed to consider, and to act and report upon the proposed zone change upon the reference of a petition to it *326 by the council, and its proceedings and report are not to be affected by defects in the manner of execution of the petition.
In any event, the council had the right, independent of any petition to legislate upon the proposed zone change, and the objections here with reference to the petition are in the category of mere irregularities which would not affect its legislative powers.

2. The requirements with respect to the holding of a public hearing in connection ivith the enactment of the General Ordinance were sufficiently complied with.

As noted above, it is provided that the Common Council of the city has the power to supplement, amend or change the regulations and districts established by the zoning ordinance “ after public notice and hearing.” (See L. 1946, ch. 722 as amd. by L. 1947, ch. 133 and by Local Law No. 10 of 1953, supra. See, also, General City Law, § 83, so providing.) The Common Council did duly direct the holding of a public hearing in connection with the proposed zone change, directing that it be held at its council chambers in the City Hall, on April 22, 1958, at 8:00 p.m., and gave due notice thereof. The hearing was duly called at the time and place specified. The plaintiffs point out that the chambers were inadequate to accommodate the number of persons desiring to be heard. It is true that the chamber room itself was crowded to capacity at the beginning and during a greater part of the hearing with a number of interested persons standing therein and a number unable to g’ain admittance. Those not able to gain admittance were required to stand outside in the corridor, and, during part of the time that they were standing there, the doors to the chambers were closed so that they could hot hear what was going on. It also appears that hearings scheduled for that evening were lengthy and that the chambers remained packed to capacity until about 12 midnight. Then, people were coming and going from the chambers. Persons who remained in the corridor could thereafter gain admittance and be heard. The hearing continued until 1:45 a.m., and all remaining and desiring to be heard were heard. There was received in evidence a stenographic record of the hearing, and, therefrom, it appears that the council did receive at the hearing a very full and detailed presentation for and against the proposed amendment.
As it stands now, the hearing, in connection with this particular legislation, was held at a customary time and place and completed, and the ordinance enacted on the basis thereof. In my opinion, the ordinance is not to be struck down because the *327 Mayor and council failed to anticipate the extent of the crowd that would attend and provide a more spacious hearing room for the convenience thereof.
Generally speaking, public hearing requirements in connection with particular legislative action do not stand as a guarantee that persons shall have the right to a full-scale hearing with respect to their individual interests. Consequently, the decisions cited by plaintiff having to do with hearing requirements in connection with matters before quasi-judicial or administrative bodies are not fully applicable. The purpose of a provision for a public hearing by a legislative body is to guard against hasty legislative enactments and to insure informed and deliberate action by the body. Such a provision is sufficiently complied with where reasonable opportunity is afforded for presentation to and consideration by the legislative body of reasonably complete data for and against the proposed legislative action. This appearing, it would be immaterial that certain individuals were inconvenienced or limited in the matter of the personal presentation of their respective individual cases for or against the proposed action. Where, as here, the hearing was held at a customary place and beginning at a proper hour and there was a very full presentation of the pros and cons, the legislative action is not, in my opinion, to be struck down because particular individuals, on account of crowded conditions, were unable to be heard without waiting several hours. To hold otherwise would permit the frustration of legislative action by the mere assembling of crowds at the appointed time and place for a hearing.
In view of the foregoing it is concluded that General Ordinance No. 15-1958 is not void for lack of compliance with public hearing requirements.

3. The error in the metes and hounds description of the parcel rezoned, as set out in the General Ordinance, is not such as to avoid the ordinance.

Certain courses and distances in the description of the parcel rezoned set out as “ S. 58° 30' 35" W. still along lands of Castellano 98.66 feet to Bacon Place, thence No. 55° 40' 30" W. 106.42 feet and thence N. 59° 05' 40" W. 379.81 feet along the northerly side of Bacon Place ” are in error in that the particular courses do not run to and along the northerly side of Bacon Place. The same in fact run to a point 10.96 feet north of the north line of Bacon Place and thence westerly 10 and a fraction feet from and substantially parallel to Bacon Place. A plotting of the description as a whole establishes that the south *328 erly boundary of the parcel rezoned is 10 and a fraction feet north of Bacon Place and not along it. This is in accordance with the survey attached to the petition for the rezoning, upon which the council acted, and there is, in fact, no uncertainty as to the actual metes and bounds of the parcel rezoned.
Where, as here, the description, taken as a whole is sufficiently clear to indicate the intended bounds of the subject parcel, with the courses and distances set out correctly therein, and there is clear indication of the legislative intent that such courses and distances control, conflicting statements therein erroneously fixing particular points or bounds at specified property or street lines will be rejected as inadvertent error. Under such circumstances the courses and distances will prevail (see Higinbotham v. Stoddard, 72 N. Y. 94) and, the description being sufficiently definite to indicate the legislative intent, the zoning amendment is valid. (See Mallett v. Village of Mamaroneck, 283 App. Div. 1094.)

4. There is no merit to the contention that 'a reservation of a “ buffer-zone ” on three sides of the subject parcel invalidates the General Ordinance.

It appears that the property owners, who sought the zone-change, together owned lands comprising an area somewhat wider and deeper than the parcel which has been rezoned. For the protection of residential areas to the rear and near the sides of the lands in the rear, it was suggested by the Planning Board that a 200-foot strip of the lands along the north side thereof in the rear, a 200-foot strip along the rear and extending partially on the south side, and a 10-foot strip along the south side adjacent to Bacon Place should remain unchanged in existing residential classifications. These strips were referred to as ‘ ‘ buffer-strips ” or “ buffer-zones ’ ’. There were representations in behalf of the owners that the lands in such strip would be kept unimproved and in their natural state, and these representations were made to the council. The parcel rezoned, as described in the General Ordinance, was confined to an area excluding said 200-foot strips on the north, east, and partially on the south and the 10-foot strip on the south. Thus, the lands in such strips, which are unimproved, retain their residential classifications.
The plaintiffs contend that the change in zone was conditional and, therefore, invalid because enacted on strength of representations that the so-called “ buffer-zones ” would remain unimproved and inviolate. The legislative enactment, however, makes no reference to any<£ buffer-zones S! or conditions, and provides, *329 in effect, for an unconditional change in zone of the parcel described therein. Whether or not representations with respect to use of the so-called “ buffer-zones ” induced the legislation, is immaterial for it is held that the motives and promptings of the legislators in enacting a zoning ordinance amendment are not subject to review by the court. (Homefield Assn, of Yonkers v. Frank, 273 App. Div. 788, supra.) The court may not strike the ordinance down as conditional where it does not so appear on its face.

5. The General Ordinance is not established to be in the category of invalid “ spot-zoning ”.

The plaintiffs here have failed to establish that the zone change was arbitrarily made.without any substantial relationship to public health, safety or welfare. This is not the case of the rezoning of a small- single lot for broad commercial uses, contrary to the recommendation of the Planning Board, and, therefore, Freeman v. City of Yonkers (205 Misc. 947) is distinguishable.
“ Upon parties who attack an ordinance such as the present rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. 1 If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. ’ (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 388 * * *.) ” (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118.) The fact is that on the whole case there is no sufficient showing tending to support a finding that it was unreasonable and arbitrary for the council to rezone this parcel for business and apartment house uses.
The evidence here establishes that, during recent years, a number of properties abutting Central Park Avenue and north of Eoxbury Eoad have been developed or rezoned for business uses. This is understandable because the avenue has become a very busy main traffic artery and the subject of a great deal of truck and commercial traffic. Further, the areas back off the avenue are rapidly being developed for residential uses, with the result that the residents in these areas require conveniently located business establishments, and Central Park Avenue is the logical place for them. The City Planning Board has apparently given the matter considerable study and did report favorably on the proposed rezoning of this lot for business development and use.
*330 The subject parcel is located in the immediate vicinity of two other parcels on Central Park Avenue which were rezoned by the Common Council at about the same time — one to the south for purposes of a designed shopping- center, and the other almost directly across the street for purposes of a bowling alley. The pattern of change is a continuing- one, and the Common Council subsequently and prior to the trial has rezoned a large parcel immediately to the north on Central Park Avenue for a “ BA ” use. The picture as a whole bespeaks of well-planned and uniform action as distinguished from arbitrary spot-zoning.
Clearly, the council, as the city’s legislative body, has the power to make reasonable changes in districts from time to time deemed by it, in its judgment, to be advisable to proper future development of the city (see Greenberg v. City of New Rochelle, 206 Misc. 28). “ Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to hoAV various properties shall be classified or reclassified, rests Avith the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing- such arbitrariness is imposed upon him who asserts it.” (Rodgers v. Village of Tarry town, 302 N. Y. 115, 121.)

6. Inconvenience and annoyance of nearby residents, damage to owners of nearby property, incidental benefit to the owners of the subject parcel, and traffic congestion resulting from the zone change are not grounds for annulling the General Ordinance.

Clearly, the owners and occupants of property in a particular district enjoy no vested right to a continuance of a particular classification existing with respect to such district or existing Avith respect to property in an adjoining district. (See Rodgers v. Village of Tarry town, 302 N. Y. 115, supra.) Depreciation in value of neighborhood property and special hardship of the owners thereof are insufficient to invalidate a zoning amendment which promotes the general welfare. (Hudson v. Town of Oyster Bay, 248 App. Div. 737; Matter of Wulfsohn v. Burden, 241 N. Y. 288, 302.)
*331 Clearly, too, incidental benefit to the owners of lands in a rezoned parcel does not affect the validity of the ordinance rezoning the parcel, for the test to be applied is whether or not the ordinance is in the interest of public welfare. Nor is the validity of such an ordinance affected by the fact that serious traffic congestion in the streets abutting and in the vicinity of the subject parcel will from time to time occur because of the new uses permitted of the parcel by a zone change. Adequate facilities and controls for increased traffic following the changes in use may properly be the subject of independent and subsequent provision by the proper authorities. (See Greenberg v. City of New Rochelle, supra.)
True, all these are matters which should be considered by the legislative body in determining- whether the zone change is in the interests of public welfare. But the court, in an action attacking the validity of a zoning amendment, may not review nor interfere with legislative discretion in this connection. The question here before the court is not whether or not the amending ordinance is ill-advised from a legislative standpoint. It was within the province of the Common Council to determine what is sound public policy from a zoning standpoint for the future development of the unimproved lands along Central Park Avenue. The council’s judgment must be accepted as conclusive where, as here, the plaintiffs have failed to show that the zone change has no reasonable basis.
This shall stand as the decision of the court, and judgment hereon dismissing the complaint shall be settled on notice returnable before June 25, at chambers, Middletown, N. Y.