CHURCHILL RODGERS, Appellant, *v.* VILLAGE OF TARRYTOWN et al., Respondents.

Argued October 9, 1950; decided January 18, 1951.

*Mark F. Hughes* for appellant. I. The novel scheme here involved conflicts with the districting, uniformity of uses, and comprehensive planning requirements of the Village Law. It is an illegal and unconstitutional device for granting variances to owners of ten acres without the statutory proof required for a variance in that it invites the rezoning from time to time of single properties of individual owners and only if, as and when the owners make application for rezoning. (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221; *Matter of Kensington-Davis Corp.*

v. *Schwab,* 239 N. Y. 54; *City of Utica* v. *Hanna,* 202 App. Div. 610; *Harris* v. *Village of Dobbs Ferry,* 208 App. Div. 853; *City of Olean* v. *Conkling,* 157 Misc. 63; *Kennedy* v. *City of Evanston,* 181 N. E. 312 [Ill.]; *Page* v. *City of Portland,* 178 Ore. 632; *Edgewood Civic Club* v. *Blaisdell,* 95 N. H. 544; *Polk* v. *Axton,* 306 Ky. 498.) II. The 1948 amendment is invalid for the further reasons that (1) the planning board was illegally constituted; (2) no amendment was made to the official village map as required by the 1947 amendment, and (3) respondent Rubin did not possess the necessary ten acres since the official village map reveals a thoroughfare laid out across her property. (*Christoffel* v. *United States,* 338 U. S. 84; *People ex rel. Dann* v. *Williams,* 36 N. Y. 441; *Headley* v. *City of Rochester,* 272 N. Y. 197.) III. The burden should have been placed upon the owner of the plot to have demonstrated, among other things, that (1) the use which would be authorized would not alter the essential character of the locality, and (2) the requisite hardship was due to the unique circumstances and not to the general conditions of the neighborhood which might reflect the unreasonableness of the zoning ordinance itself. (*Matter of Otto* v. *Steinhilber,* 282 N. Y. 71; *Matter of Clark* v. *Board of Zoning Appeals,* 301 N. Y. 86.) IV. The village's scheme violates the comprehensive planning requirement of the Village Law (§ 175). (*Nappi* v. *La Guardia,* 184 Misc. 775, 269 App. Div. 693, 295 N. Y. 652; *Matter of Kensington-Davis Corp.* v. *Schwab,* 239 N. Y. 54; *Shepard* v. *Village of Skaneateles,* 300 N. Y. 115; *Matter of Clark* v. *Board of Zoning Appeals,* 301 N. Y. 86; *Matter of Small* v. *Moss,* 279 N. Y. 288; *Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Matter of Wulfson* v. *Burden,* 241 N. Y. 288; *Rice* v. *Van Vranken,* 132 Misc. 82.)

*Paul Windels* and *C. McKim Norton* for Regional Plan Association, Inc., *amicus curiæ,* in support of appellant's position. The zoning powers of the Village of Tarrytown were not validly exercised in the adoption of the zoning resolutions under review.

*Kenneth F. Stone* and *George Link, Jr.,* for Mrs. Mary E. McIlravy and others, *amici curiæ,* in support of appellant's posi-

tion.  The Tarrytown zoning amendments, enacted respectively in 1947 and 1948, constitute an invalid exercise of the police power.  They create a condition of illegal spot zoning and destroy the comprehensive plan of the village.  (*City of Utica* v. *Hanna,* 202 App. Div. 610.)

*William T. Love, Jr.,* for Village of Tarrytown and others, respondents.  I. The 1947 and 1948 zoning amendments comply with all the zoning objectives and requirements of the Village Law and are constitutional.  (*Nappi* v. *La Guardia,* 184 Misc. 775, 269 App. Div. 693, 295 N. Y. 652; *Shepard* v. *Village of Skaneateles,* 300 N. Y. 115; *Zahn* v. *Board of Public Works,* 274 U. S. 325; *Kane* v. *Walsh,* 295 N. Y. 198; *Reichelderfer* v. *Quinn,* 287 U. S. 315; *Matter of Kensington-Davis Corp.* v. *Schwab,* 239 N. Y. 54; *Matter of Green Point Sav. Bank* v. *Board of Zoning Appeals,* 281 N. Y. 534.)  II. The further contentions of appellant that the 1948 amendment is invalid because (1) the planning board was illegally constituted; (2) no amendment was made to the official village map as allegedly required by the 1947 amendment, and (3) respondent property owner did not possess the necessary ten acres since the official village map reveals a thoroughfare laid out across her property, have no basis whatsoever in law or in fact.  (*People ex rel. Griffing* v. *Lister,* 106 App. Div. 61; *Dolan* v. *Mayor of City of N. Y.,* 68 N. Y. 274; *Demarest* v. *Mayor of City of N. Y.,* 147 N. Y. 203; *Matter of Sloane* v. *Walsh,* 245 N. Y. 208; *Headley* v. *City of Rochester,* 272 N. Y. 197; *Matter of City of New York* [*Briggs Ave.*], 196 N. Y. 255.)

*Arthur D. Brennan, Chester A. Slocum* and *James D. Hopkins* for Elizabeth H. Rubin, respondent.  Placing of the property of respondent Rubin in a " Residence B-B " district under the provisions of the 1947 and 1948 amendments to the zoning ordinance was valid.  (*People ex rel. Griffing* v. *Lister,* 106 App. Div. 61; *Dolan* v. *Mayor of City of N. Y.,* 68 N. Y. 274; *Demarest* v. *Mayor of City of N. Y.,* 147 N. Y. 203; *Matter of Sloane* v. *Walsh,* 245 N. Y. 208; *Loos* v. *City of New York,* 257 App. Div. 219; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377.)

FULD, J. This appeal, here by our permission, involves the validity of two amendments to the General Zoning Ordinance of the Village of Tarrytown, a suburban area in the County of Westchester, within twenty-five miles of New York City.

. Some years ago, Tarrytown enacted a General Zoning Ordinance dividing the village into seven districts or zones — Residence A for single family dwellings, Residence B for two-family dwellings, Residence C for multiple dwellings and apartment houses, three business districts and an industrial zone. In 1947 and 1948, the board of trustees, the village's legislative body, passed the two amendatory ordinances here under attack.

The 1947 ordinance creates " A new district or class of zone * * * [to] be called ' Residence B-B ' ", in which, besides one- and two-family dwellings, buildings for multiple occupancy of fifteen or fewer families were permitted. The boundaries of the new type district were not delineated in the ordinance but were to be " fixed by amendment of the official village building zone map, at such times in the future as such district or class of zone is applied, to properties in this village." The village planning board was empowered to approve such amendments and, in case such approval was withheld, the board of trustees was authorized to grant it by appropriate resolution. In addition, the ordinance erected exacting standards of size and physical layouts for Residence B-B zones: a minimum of ten acres of land and a maximum building height of three stories were mandated; set-back and spacing requirements for structures were carefully prescribed; and no more than 15% of the ground area of the plot was to be occupied by buildings.

A year and a half after the 1947 amendment was enacted, defendant Elizabeth Rubin sought to have her property, consisting of almost ten and a half acres in the Residence A district, placed in a Residence B-B classification. After repeated modification of her plans to meet suggestions of the village planning board, that body gave its approval, and, several months later, in December of 1948, the board of trustees, also approving, passed the second ordinance here under attack. In essence, it provides that the Residence B-B district " is hereby applied to the [Rubin] property * * * and the district or zone of said property is hereby changed to ' Residence B-B ' and the

official Building Zone Map of the Village of Tarrytown is hereby amended accordingly [by specification of the various parcels and plots involved] ''.

Plaintiff, who owns a residence on a six-acre plot about a hundred yards from Rubin's property, brought this action to have the two amendments declared invalid and to enjoin defendant Rubin from constructing multiple dwellings on her property. The courts below, adjudging the amendments valid and the action of the trustees proper, dismissed the complaint. We agree with their determination.

While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it. In that connection, we recently said (*Shepard* v. *Village of Skaneateles,* 300 N. Y. 115, 118): " Upon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. ' If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.' (*Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 388; see, also, *Town of Islip* v. *Summers Coal & Lbr. Co.,* 257 N. Y. 167, 169, 170; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288, 296–297.) ''

By that test, the propriety of the decision here made is not even debatable. In other words, viewing the rezoning in the case before us, as it must be viewed, in the light of the area involved and the present and reasonably foreseeable needs of

the community, the conclusion is inescapable that what was done not only accorded with sound zoning principles, not only complied with every requirement of law, but was accomplished in a proper, careful and reasonable manner.

The Tarrytown board of trustees was entitled to find that there was a real need for additional housing facilities; that the creation of Residence B-B districts for garden apartment developments would prevent young families, unable to find accommodations in the village, from moving elsewhere; would attract business to the community; would lighten the tax load of the small home owner, increasingly burdened by the shrinkage of tax revenues resulting from the depreciated value of large estates and the transfer of many such estates to tax-exempt institutions; and would develop otherwise unmarketable and decaying property.

The village's zoning aim being clear, the choice of methods to accomplish it lay with the board. Two such methods were at hand. It could amend the General Zoning Ordinance so as to permit garden apartments on any plot of ten acres or more in Residence A and B zones (the zones more restricted) or it could amend that Ordinance so as to invite owners of ten or more acres, who wished to build garden apartments on their properties, to apply for a Residence B-B classification. The board chose to adopt the latter procedure. That it called for separate legislative authorization for each project presents no obstacle or drawback — and so we have already held. (See, e.g., *Nappi* v. *La Guardia,* 184 Misc. 775, 781 [per Froessel, J.], affd. 269 App. Div. 693, affd. 295 N. Y. 652; *Matter of Green Point Sav. Bank* v. *Board of Zoning Appeals,* 281 N. Y. 534, 539.) Whether we would have made the same choice is not the issue; it is sufficient that the board's decision was neither arbitrary nor unreasonable.

As to the requirement that the applicant own a plot of at least ten acres, we find nothing therein unfair to plaintiff or other owners of smaller parcels. The board undoubtedly found, as it was privileged to find, that garden apartments would blend more attractively and harmoniously with the community setting, would impose less of a burden upon village facilities, if placed upon larger tracts of land rather than scat-

tered about in smaller units. Obviously, some definite acreage had to be chosen, and, so far as the record before us reveals, the choice of ten acres as a minimum plot was well within the range of an unassailable legislative judgment. (See, e.g., *Nappi v. La Guardia, supra,* 295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775, wherein the qualifying acreage was also fixed at ten.)

Nor did the board, by following the course which it did, divest itself or the planning board of power to regulate future zoning with regard to garden apartments. The mere circumstance that an owner possesses a ten-acre plot and submits plans conforming to the physical requirements prescribed by the 1947 amendment will not entitle him, *ipso facto,* to a Residence B-B classification. It will still be for the board to decide, in the exercise of a reasonable discretion, that the *grant* of such a classification accords with the comprehensive zoning plan and benefits the village as a whole. And — while no such question is here presented — we note that the board may not arbitrarily or unreasonably *deny* applications of other owners for permission to construct garden apartments on their properties. The action of the board must in all cases be reasonable and, whether a particular application be granted or denied, recourse may be had to the courts to correct an arbitrary or capricious determination. (See, e.g., *Nappi v. La Guardia, supra,* 184 Misc. 775, 781, affd. 269 App. Div. 693, affd. 295 N. Y. 652; *Matter of Green Point Sav. Bank v. Board of Zoning Appeals, supra,* 281 N. Y. 534, 539; *Arverne Bay Constr. Co. v. Thatcher,* 278 N. Y. 222, 232; *Dowsey v. Village of Kensington,* 257 N. Y. 221, 231; *Matter of Larkin Co. v. Schwab,* 242 N. Y. 330, 334, 336; *City of Little Rock v. Joyner,* 212 Ark. 508; *Frink v. Orleans Corp.,* 159 Fla. 646.)

The charge of illegal " spot zoning "— levelled at the creation of a Residence B-B district and the reclassification of defendant's property — is without substance. Defined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners (see *Harris v. City of Piedmont,* 5 Cal. App. 2d 146, 152; *Cassel v. Mayor & City Council of Baltimore,* 73 A. 2d 486, 488–489 [Md.]; *Board of Co. Comrs. of Anne*

*Arundel Co.* v. *Snyder,* 186 Md. 342, 345–346; *Leahy* v. *Inspector. of Bldgs. of New Bedford,* 308 Mass. 128, 134; *Page* v. *City of Portland,* 178 Ore. 632, 641; *Weaver* v. *Ham,* 232 S. W. 2d 704, 709 [Tex.]; see, also, Yokley, Zoning Law and Practice [1948], § 85; cf. *People* v. *Cohen,* 272 N. Y. 319), " spot zoning " is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not " spot zoning," even though it (1) singles out and affects but one small plot (see, e.g., *Shepard* v. *Village of Skaneateles, supra,* 300 N. Y. 115) or (2) creates in the center of a large zone small areas or districts devoted to a different use. (See *Nappi* v. *La Guardia, supra,* 295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775 — business area in residence zone; *Marshall* v. *Salt Lake City,* 105 Utah 111, 126–127 — business district in residence zone; *Higbee* v. *Chicago, B. & Q. R. R. Co.,* 235 Wis. 91, 98–99 — railroad station in residence zone; see, also, *Avery* v. *Village of La Grange,* 381 Ill. 432, 442; *Town of Marblehead* v. *Rosenthal,* 316 Mass. 124, 126; Rathkopf, Law of Zoning and Planning [2d ed., 1949], p. 72 *et seq.*) Thus, the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community. Having already noted our conclusion that the ordinances were enacted to promote a comprehensive zoning plan, it is perhaps unnecessary to add that the record negates any claim that they were designed solely for the advantage of defendant or any other particular owner. Quite apart from the circumstance that defendant did not seek the benefit of the 1947 amendment until eighteen months after its passage, the all-significant fact is that that amendment applied to the entire territory of the village and accorded each and every owner of ten or more acres identical rights and privileges.

By the same token, there is no basis for the argument that " what has been done by the board of trustees " constitutes a device for " the granting of a ' variance ' " (opinion of CONWAY, J., p. 129). As we have already shown, the village's zoning aim, the statute's purpose, was not to aid the individual owner but to permit the development of the property for the

general welfare of the entire community. That being so, the board of trustees followed approved procedure by changing the General Zoning Ordinance itself. (See, e.g., *Matter of Clark* v. *Board of Zoning Appeals,* 301 N. Y. 86, 91.) Accordingly, when the board was called upon to consider the reclassification of the Rubin property under the 1947 amendment, it was concerned, not with any issue of hardship, but only with the question of whether the property constituted a desirable location for a garden apartment.

We turn finally to the contention that the 1947 ordinance is invalid because, in proclaiming a Residence B-B district, it set no boundaries for the new district and made no changes on the building zone map. The short answer is that, since the ordinance merely prescribed specifications for a new use district, there was no need for it to do either the one or the other. True, until boundaries are fixed and until zoning map changes are made, no new zone actually comes into being, and neither property nor the rights of any property owner are affected. But it was not the design of the board of trustees by that enactment to bring any additional zone into being or to affect any property or rights; the ordinance merely provided the mechanics pursuant to which property owners might in the future apply for the redistricting of their property. In sum, the 1947 amendment was merely the first step in a reasoned plan of rezoning, and specifically provided for further action on the part of the board. That action was taken by the passage of the 1948 ordinance which fixed the boundaries of the newly created zone and amended the zoning map accordingly. It is indisputable that the two amendments, read together as they must be, fully complied with the requirements of the Village Law and accomplished a rezoning of village property in an unexceptionable manner.

In point of fact, there would have been no question about the validity of what was done had the board simply amended the General Zoning Ordinance so as to permit property in Residence A and Residence B zones — or, for that matter, in the other districts throughout the village — to be used for garden apartments, provided that they were built on ten-acre plots and that the other carefully planned conditions and restric-

tions were met. It may be conceded that, under the method which the board did adopt, no one will know, from the 1947 ordinance itself, precisely where a Residence B-B district will ultimately be located. But since such a district is simply a garden apartment development, we find nothing unusual or improper in that circumstance. The same uncertainty — as to the location of the various types of structures — would be present if a zoning ordinance were to sanction garden apartments as well as one-family homes in a Residence A district — and yet there would be no doubt as to the propriety of that procedure. (See *Nappi* v. *La Guardia, supra,* 295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775.) Consequently, to condemn the action taken by the board in effectuating a perfectly permissible zoning scheme and to strike down the ordinances designed to carry out that scheme merely because the board had employed two steps to accomplish what may be, and usually is, done in one, would be to exalt form over substance and sacrifice substance to form.

Whether it is generally desirable that garden apartments be freely mingled among private residences under all circumstances, may be arguable. In view, however, of Tarrytown's changing scene and the other substantial reasons for the board's decision, we cannot say that its action was arbitrary or illegal. While hardships may be imposed on this or that owner, " cardinal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals." (*Shepard* v. *Village of Skaneateles, supra,* 300 N. Y. 115, 118.)

The judgment of the Appellate Division should be affirmed, with costs.

Conway, J. (dissenting). The decision here made gives judicial sanction to a novel and unprecedented device whereby the board of trustees of a village may, in the exercise of its discretion, authorize the erection of multiple family dwellings on property, located wholly within established districts theretofore uniformly zoned for use as one- or two-family dwellings, by the simple expedient of declaring, upon the application of individuals owning a certain acreage, that henceforth such property shall constitute a new and separate zoning district.

The device may have much to commend it in the way of administrative convenience, but it most assuredly is not " zoning ", as that term has previously been understood. We think the action of the board of trustees of the village of Tarrytown is unauthorized by the Village Law of this State, which is the sole source of the board's power to act. Moreover, we feel that the board's action, here approved, is completely at odds with all sound zoning theory and practice, and may well prove to be the opening wedge in the destruction of effective and efficient zoning in this State.

First of all, we think the board had no power to create the so-called " Residence B-B " district by the basic ordinance of 1947. Section III of that ordinance provided as follows: " *The boundaries of said newly created district* or class of zone *will be fixed* by amendment of the official village building zone map, *at such times in the future* as such district or class of zone is applied, to properties in this village." (Emphasis supplied.) That language can, in no sense, be considered as validly creating a new district or class of zone. It is essential to the creation of a zoning district that its physical boundaries be established in advance; otherwise there is no " district ", there is merely the possibility that a district may one day be delineated. (*Matter* of *Kensington-Davis Corp.* v. *Schwab*, 239 N. Y. 54, 58–59.) Section 176 of the Village Law, entitled " Districts ", provides that " * * * the board of trustees may *divide the village into districts* of such number, *shape* and *area* as may be deemed best suited to carry out the purposes of this act * * * " (emphasis supplied). The plain import of that language is that after the board has exercised its power to " divide the village into districts ", there should result a number of physically ascertainable districts, each having a definite " shape " and " area ". Obviously, the board of trustees, in enacting the 1947 ordinance, did not " divide " the village into districts; the board merely assigned a name or title to a district which might some day be created. As a result of that ordinance, no one could tell whether there would ever be any " Residence B-B districts ", or, if so, what their number, shape and area might be. Thus, the reference in the ordinance to " districts " or " zones " is meaningless, for it is impossible to have a true " district " or " zone " without specified boundaries. As we

said in the *Kensington* case (*supra*, p. 58) '' Power was given under that law ' to divide the city into districts.' This clearly contemplated fixed areas with defined boundaries.'' The key to any zoning ordinance is the map showing the boundaries of the areas affected. No map showing the location of the new Residence B-B district was, or could have been, made and filed with the 1947 ordinance which was therefore defective. (*Village of Williston Park* v. *Israel,* 301 N. Y. 713, affg. 276 App. Div. 968, affg. 191 Misc. 6.) All that the language of the 1947 ordinance means is that, from time to time, in the future, the board may, upon the application of individuals owning ten acres, set aside certain property in the village and assign to it the '' Residence B-B '' designation. That, we submit, is '' spot zoning '', if it may be classified as zoning at all, and is unauthorized under our statutes.

Under the mandate of section 177 of the Village Law, the regulations of the board of trustees, including the division of the village into districts, '' shall be made in accordance with a *comprehensive plan* '' (emphasis supplied). The action of the board in the case at bar cannot, under any view of the facts, be considered as taken '' in accordance with a comprehensive plan ''. The board takes no action on its own initiative. It makes no investigation to determine which areas of the village are suitable for the erection of multiple family dwellings, and which are not. With relation to the type of construction here involved, the board has adopted no plan, comprehensive or otherwise. Under the ordinance, the board merely waits for some individual, owning ten acres of land or who has acquired ten acres of land, to make an application to have it declared a '' Residence B-B '' district; then the board accepts or rejects the application. That is not comprehensive planning by the board; it is just the opposite. It is spot zoning at the request of landed interests who may happen to find favor with the board. As a result of this decision, it is possible that there will be found in the residential areas of Tarrytown multiple family dwellings scattered (or spotted) haphazardly throughout the village without any studied, over-all plan — for how may the board adopt a comprehensive plan with respect to these multiple family dwellings when it is impossible for it to know the names, number and location of individuals who own or who may acquire ten-acre

parcels and who may wish to avail themselves of the ordinance. This is an ordinance which benefits those who can meet a property qualification and is thus undemocratic.

We are adjured by the prevailing opinion (p. 126) not " to exalt form over substance and sacrifice substance to form ", yet we think the decision of the majority has done just that. Essentially and basically, what has been done by the board of trustees in the instant case is to permit a nonconforming use in an established zone. Heretofore, such action has always been referred to as the granting of a " variance ", yet the board has here sought to cloak its ultimate objective under the label and form of " rezoning ". In order to protect and preserve our zoning systems from the frequent and inevitable attacks of interested parties who seek to avoid zoning laws for their own purposes, this court has imposed strict and severe limitations upon the granting of variances. Two recent illustrations are *Matter of Taxpayers' Assn.* v. *Board of Zoning Appeals* (301 N. Y. 215), and *Matter of Clark* v. *Board of Zoning Appeals* (301 N. Y. 86). It cannot be denied that the individual respondent here would never have been able to secure a variance permitting the erection of multiple family dwellings in Residence A or B districts under the rules stated in those two cases. Nevertheless, the identical result has here been reached by denominating the action of the board as " rezoning ". In that fashion, the board of trustees (which, incidentally, does not even have the power to grant a variance, since that power resides in the board of appeals [Village Law, § 175]) has successfully avoided the long-established and stringent limitations upon the granting of variances, merely by adopting a procedure under the name of " rezoning ". Now, instead of making the required showing that (1) the land cannot yield a reasonable return if used only for a purpose allowed in that zone, (2) that the plight of the owner is due to unique circumstances and not to the general conditions of the neighborhood, and (3) that the use sought will not alter the essential character of the neighborhood (*Matter of Taxpayers' Assn.* v. *Board of Zoning Appeals, supra,* p. 218), all a property owner need do is to show that he possesses ten acres of land and the board becomes authorized to permit a nonconforming use thereon. That, we submit, is truly exalting form over substance.

The case of *Nappi* v. *La Guardia* (295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775), is clearly distinguishable from the case at bar. In the *Nappi* case, the New York City zoning resolution did not purport to establish a new district; it merely added a further permitted use to the uses already authorized in certain residence districts in the city. The distinction is obvious and important. A person purchasing property in New York City in the designated residence districts would be on notice that the additional use was authorized. He may examine the zoning ordinance and discover, with certainty, all the permitted uses to which the adjoining property could be put. On the contrary, a person purchasing property in Tarrytown in a Residence A or B district to bring up his children now has no way of knowing whether the property next to his may or may not become the site of a multiple family dwelling with the attendant increases in population, traffic dangers, commerce and congestion.

Finally, it seems to us specious to argue that since the ultimate objective of the board might have been accomplished in a different and legal manner, that the procedure actually used should therefore be sustained. The question remains whether the particular method adopted by the board was in conformity with the legislative requirements found in the Village Law, and whether it accorded with sound, proper zoning theory and practice. In this case, we feel that the board's action must fall on both counts. That being so, it is of no moment that the same result might have been reached through the employment of approved, legal procedures. Zoning methods are determined by the Legislature and not by the ingenuity of local boards of trustees or by the courts. In short, we think the end cannot here justify the means used.

The judgments below should be reversed and the case remitted to Special Term for the entry of a judgment in plaintiff's favor in accordance with this opinion.

LOUGHRAN, Ch. J., LEWIS, DYE and FROESSEL, JJ., concur with FULD, J.; CONWAY, J., dissents in opinion in which DESMOND, J., concurs.

Judgment affirmed.