Richard D. Simons, J.
This is an action for a declaratory judgment and injunction brought by certain property owners in the Town of New Hartford, New York, seeking to declare unconstitutional a zoning ordinance passed by the Town Board August 19,1964 which rezoned property belonging to defendant Millington and since conveyed to defendant I. Gordon Realty Corporation. The amendment reclassified certain property from R-l, One-Family Residence District to B-General Business District.
The property in question is a major part of the so-called Sherman tract, a vacant wooded area located on the south side of Genesee Street, New York State Route 5, in the Town of New Hartford and bounded generally on the west by Grandview Avenue, on the south by Tennyson Avenue and on the east by other Sherman land. Route No. 12 intersects Genesee Street at approximately Grandview Avenue and runs southwesterly from Genesee at an angle with Grandview Avenue. A ravine and brook run through the property on the east and south sides intersecting Genesee Street at the northeast corner of the rezoned property and extending westerly past the dead end of Grandview Avenue to Route 12 at the southwest corner. It is this portion of the land encompassing part of the ravine and northwest of the ravine which was rezoned to general business use for the purpose of erecting a Howard Johnson Restaurant and eventually a motel. The plaintiffs are all residents of Grandview Avenue whose houses are located on the westerly side of that street and face the subject property to the east. Grandview Avenue is a dead-end street about 500 feet long. Part of the rezoned property is also south of plaintiffs’ houses and extends west of Grandview Avenue to Route 12.
The Town of New Hartford is a rapidly expanding suburb of the City of Utica primarily residential in nature. Its main east-west street is Genesee Street. In the vicinity of the subject premises is the intersection of Genesee Street with an arterial highway leading north to Utica. Where these roads meet is a large and complex interchange separating the various roads with grassy malls and trees. (Scaled on the map Exhibit No. 10, the intersection is over 1,500 feet long east and west and over 400 feet wide north and south at its widest points.) The subject premises are at the southeast end of the interchange. Exiting to the south from that intersection is New York State Route 12. Approximately 700 feet farther west, the Clinton Road exits the interchange to the south. Grandview Avenue is immediately east of Route 12 and does not directly enter the interchange but rather joins Route 12 just before it reaches the interchange.
*106 Opposite the rezoned property north of the interchange and Genesee Street and east of the north-sonth arterial has been erected a large modern office building which is the home office of the Utica Mutual Insurance Company. On the northwest corner of Genesee .Street and the north-south arterial at the west end of the interchange is the Yahnundasis Golf Club. At the southwest corner of Genesee .Street and the Clinton Road is a small dry-cleaning establishment and a lawn mower business.
■Clinton Road, proceeding south from the intersection, is largely devoted to residential uses and vacant land, although there are one or two nonconforming uses existing some distance south of the interchange. Several hundred feet east of Grand-view Avenue on the north side of Genesee Street are three nonconforming uses, a bar, a grocery store and a tailor shop. Other than the exceptions noted, the area is completely residential in nature consisting primarily of one-family houses. With the exception of the Utica Mutual property and the cleaners and lawn mower businesses, all the property around the intersection and for almost a half a mile distant from the subject premises was zoned residential prior to August 19, 1964 and the area south of Genesee .Street and the Clinton Road was zoned exclusively residental. The homes in the area are valued at between $12,000 to $25,000 along Genesee Street and in the area south of Genesee Street are homes valued as high as $60,000. The homes on Grandview Avenue were appraised at approximately $16,000. On the remaining portion of the Sherman property immediately east of the rezoned area are two substantial homes owned by the Sherman family.
The rezoned property fronts to the north in irregular courses a distance of approximately 640 feet and is about 700 feet deep at its deepest point. Its easterly and southerly boundary follows generally the contours of the ravine and includes the ravine property. This ravine is about 40 to 50 feet lower than the remaining property. Located to the south on Tennyson Avenue are private one-family residences which back up to the ravine.
With the consent of all parties, the court viewed the area.
A general zoning ordinance was adopted by the Town Board in 1953. It creates five uses districts: (1) R-l, one-family residence; (2) R-2, two-family residence; (3) B-General Business; (4) I-Industrial, and (5) A-Agricultural. The ordinance has been amended from time to time and there has been a general review of its provisions underway for several years.
On June 3,1964, an application was made to rezone this property to allow construction of a restaurant. In due course, the application was referred to the Zoning Board of Appeals for *107 consideration and public hearing and thereafter referred back to the Town Board July 15, 1964 with the unanimous approval of the Zoning Board of Appeals, subject to certain conditions. On July 14, the Planning Board recommended that the entire Sherman tract be rezoned “Planned Business District”. A public hearing was held on August 5, 1964 and the ordinance amending the existing zoning ordinance and rezoning the premises by placing it in a B-Greneral Business District[1] was passed August 19, 1964.
It is this amendment which plaintiffs challenge as “ spot zoning ”.
*108 There is a presumption that a duly enacted zoning ordinance is constitutional, and the burden for establishing otherwise rests upon the petitioners. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222; Rodgers v. Village of Tarrytown, 302 N. Y. 115.) Petitioners must show that the ordinance is not justifiable under the police power of the State by any reasonable interpretation of the facts. If the judgment of the legislative body is fairly debatable, it must control. (Shepard v. Skaneateles, 300 N. Y. 115.) This presumption attaches to legislative acts amending a zoning ordinance. (Rodgers v. Village of Tarrytown, supra.)
¡Section 263 of the Town Law requires that such regulations shall be made in accordance with a “ comprehensive plan ” and they shall be designed for certain specific purposes enumerated therein to promote the general health and welfare of the community and encourage the most appropriate use of land throughout the community.
“ Spot zoning ” is “ the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such propety and to the detriment of other owners (Rodgers v. Village of Tarrytown, supra, p. 123; Anderson, N. Y. Zoning, § 5.03.) When an ordinance is challenged on this basis, the only subject of inquiry is whether the amendment was based upon a comprehensive plan of development. Spot zoning is obnoxious to the law because, by definition, it runs counter to the very purposes for which the police power may be exercised, i.e., the general welfare of the community. (Town Law, § 261 et seq.) It is thus said to be an arbitrary and unreasonable exercise of the police power. If the change accords with a comprehensive plan, it is not spot zoning even though the amendment benefits a single plot (Shepard v. Skaneateles, supra) or creates a business area in a residential zone (Rodgers v. Village of Tarrytown, supra). The suitability of the subject property for permitted or non-permitted uses is irrelevant. Individual hardship may justify a variance, but it does not justify an unlawful legislative act.
, A comprehensive plan is not necessarily a written document. (Jackson Perkins Co. v. Martin, 16 A D 2d 1, revd. on other grounds 12 N Y 2d 1082.) It is an underlying purpose to con- : trol land uses for the benefit of the whole community based upon i consideration of the community’s problems and applying the ordinance itself or a general policy to obtain a uniform result. (Place v. Hack, 34 Misc 2d 777; Thomas v. Town of Bedford, 29 Misc 2d 861, affd. 15 A D 2d 573, mot. to dismiss app. den. 11 N Y 2d 886, affd. 11 N Y 2d 428; Soule v. Town of Perington, 152 *109 N. Y. S. 2d 734, app. dsmd. 2 A D 2d 834.) It requires a consideration of the individual parcel’s relationship to the community as a whole. (Connell v. Town of Granby, 12 A D 2d 177.) In short, the requirement is that a plan be implicit in the zoning regulations as a whole and that the amendments be consistent with such plan and not enacted on a piecemeal or haphazard basis. (Anderson, N. Y. Zoning, § 5.02, p. 83.) If the amendment is calculated to benefit the community as a whole as opposed to the private welfare of the individual owners, it passes muster and incidental benefit or detriment to the owners¡ of the rezoned property or of the neighborhood property is of no direct consequence in determining the validity of the legislation.
The amendment rezoned the property so that plaintiffs could develop their proposed restaurant and motel, but no attempt was made in the legislation to condition or restrict the use as recommended by the Zoning Board of Appeals and the Planning Board (cf. Church v. Town of Islip, 8 N Y 2d 254, 259). Apparently no consideration was given to adding new districts more narrowly controlling the various areas of the town as recommended by the Planning Board. At least it was not done.
Instead, an “agreement” was executed September 2, 1964 between Mr. Millington, the then owner of the property and the defendant I. Gordon Realty Corp., the present owner of the property. That agreement contains some of the restrictions suggested by the Zoning and Planning Boards.[2] It is in the form of a covenant of restrictions on the land, but has never been recorded. Its effect is doubtful at best. Significantly, the restrictions last only until September 1, 1967 or until a new zoning ordinance is adopted (regardless of the provisions of the new zoning ordinance in respect to the subject premises). The agreement does not restrict the use of the property to motel or restaurant purposes.
It is not enough to say that the owner’s intention is to build a restaurant. We deal in actualities, not ifs. It is not the presently intended use but the many permitted uses authorized by the amendment for this vacant land that must be judged. There *110 is nothing in the record giving assurance that the land will he used solely for a restaurant and motel.
The net effect of the amendment is that what has been part of a prime residential area is now rezoned for any use itemized in section 8 of the ordinance. (Cf. Santmyers v. Town of Oyster Bay, 10 Misc 2d 614; Freeman v. City of Yonkers, 205 Misc. 947; Deligtisch v. Town of Greenburgh, 135 N. Y. S. 2d 220; North Shore Beach Prop. Owners Assn. v. Town of Brookhaven, 234 N. Y. S. 2d 635.) Unless all the permitted uses are in harmony with the character of the neighborhood and the general community program, the amendment was not a part of a comprehensive plan, because all of the uses may be legally enjoyed.
It is doubtful that the Town Board itself would urge such a result. The record shows that the amendment was adopted solely under the belief that the land would be developed for a restaurant and possibly, at a later date, a motel. The stated reasoning of two board members was that this was the ‘1 highest and best use ” of the property. But property uses are not established on the basis of the ‘1 highest and best use ’ ’ of individual parcels of land. Property uses are established for the benefit of the community as a whole and the result on the individual may be quite the opposite. In considering the propriety of restaurant and motel development of the land, the board ignored the possibility of lawful development of a wide variety of uses sanctioned by section 8 such as trailer courts, gas stations and incidental manufacturing uses which were not only not the highest and best uses of the property but which bear no reasonable relationship to the development of the neighborhood or the community plan as a whole.
When the ordinance was originally enacted, the board was charged with the responsibility to zone in accordance with a comprehensive plan for the community. (Town Law, § 263.) It must be assumed that they did so when they placed the Sherman property in an R-l residential zone. The amendment adopted August 19, 1964 imports therefore that either the original zoning was a mistake or that there are changed conditions requiring revision of the zoning as to this particular parcel. No representative of the Town Board has suggested that the original ordinance was erroneous. Nor do they suggest that the area generally was deteriorating or required downgrading to a less restrictive zone. On the contrary, one board member stated there was no conclusion to downgrade the zoning of the area, and it is noted that land acquired for the highway construction removed four nonconforming uses that previously *111 existed, thereby improving the residential nature of the neighborhood.
It is the position of the defendants that there have been changes justifying this amendment. True the area has changed since 1953 by reason of the construction of new highways and the Utica Mutual office building, but Utica Mutual’s land and the land at the corner of 'Clinton Road were zoned commercial under the original ordinance. The redesign and relocation of the highway system does not by itself justify rezoning.
Defendants rely heavily upon the presence of the office building in the area. This is a new structure well designed and maintained, set back from the road on spacious grounds, well organized for parking behind the building and extensively landscaped and shrubbed. Its detrimental effect on the neighborhood is very limited.
The recommendation of the Zoning Board and Planning Board, while not controlling on the legislative body, expressly recognized the unsuitability of the area for all the general business uses permitted under the ordinance.
It can be argued that the rezoning of this property at the very least discriminated against the remaining land in the Sherman tract which was similar in nature but left bound by the restrictions of R-l zoning by the board’s action.
The Town Board in amending the ordinance could only be moved by considerations of public welfare consistent with a comprehensive plan for the community. What considerations might have warranted such an extensive revision of the ordinance as to this single parcel escapes the court. The permitted uses under the amendment are strenuously at variance with the established character of the neighborhood. No purpose enumerated in section 263 of the Town Law can be brought to bear to support this amendment. While some legislative surgery may have been necessary in the area around the interchange in light of the changes since 1953, a scalpel was required for the operation — not a meat axe.
The court finds that the zoning ordinance amendment adopted August 19,1964 is void, and the defendants are restrained from acting pursuant to it.

, Sec. 8. B-Distriets
General Business Districts
The following regulations shall apply in all B-Distriets:
(A) Uses permitted
(1) All uses permitted in R-l and R-2 Districts, subject to all the provisions specified for such districts, except as hereinafter otherwise provided.
(2) Trailers and trailer parks, but only upon approval of the Zoning Board of Appeals.
(3) Stores and shops for the conducting of any retail or wholesale business.
(4) Personal service shops,
(5) Banks, theaters, offices, restaurants and similar community service.
(6) Garages, and filling stations, subject to the following provisions:
(a) Pumps, lubricating or other devices shall be located at least fifteen (15) feet from any street line or highway right of way line.
(b) All fuel, oil or similar substances shall be stored at least twenty-five (25) feet distant from any street or lot line.
(c) All automobile parts, dismantled vehicles and similar articles shall be stored within a building.
(7) Places for conducting the following and similar businesses that may be conducted without unreasonable noise, odors or disorder, provided that any manufacturing or processing of goods on the premises is clearly incidental to a retail business conducted on the premises, viz:
Baker
Barber
Caterer
Dressmaker
Dyer
Florist
Furrier
Hairdresser
Hotels
Hand Laundry Manicurist
Cleaner
Confectioner
Decorator
Milliner
Optician
Photographer
Ptintér
Shoeshiner, shoemaker or repairer Tailor
Telegraph and telephone office
Undertaker
Upholsterer
(8) Such accessory uses as are customarily incidental to the foregoing uses.
(9) Other uses which, in the opinion of the Board of Appeals, are of the same general character as those listed as permitted uses and which will not be detrimental to the district in which they are located.

. “A. No construction will be undertaken that will interfere with the present trees on the east side of Grandview Avenue for a distance of fifteen feet (15') parallel with the east side of said Grandview Avenue;
“B. That all buildings to be erected on said premises shall have a set back of at least fifty (50') from the property lines;
“ C. The existing trees and natural beauty of the land will be maintained as much as possible consistent with the maintenance and operation of the Restaurant and Motel.”