Richard J. Cardamohe, J.
The plaintiffs seek a permanent injunction against the defendant, the City of Rome, New York, claiming that the imposition of the setback provisions of the said city’s Ordinance No. 3215A results in the taking of plaintiffs’ property without due process of the law and is, therefore, unconstitutional as applied to plaintiffs.
At the trial plaintiffs and defendant entered into a stipulation of facts, the pertinent parts of which state that plaintiffs Flax and Chard purchased 202 Davis Ave., which are the premises in question, and 309-311 James Street, Rome, New York, from one Weinkertz on July 31, 1953. Weinkertz had operated the premises as a junkyard under the name of Copper City Scrap Company. Plaintiffs were issued a certificate of occupancy on October 19, 1953 and continued the junkyard operation as a nonconforming use. The present zoning is M-2 Manufacturing. On December 15, 1965 the City of Rome passed Ordinance No. 3215A (entitled “Regulating Automobile Junk Yards”) which requires a 60-foot setback for fences (§ 10) and a 60-foot setback for buildings (§ 11). A license was granted by the city to plaintiffs from February to September 1966 to operate the premises as a pre-existing, nonconforming use. In September, 1967 plaintiffs petitioned for a waiver of the setback provisions of Ordinance No. 3215A which was denied by the Common Council of the city on December 20, 1967. By letter dated December 21, 1967 the plaintiffs were given 30 days to cease operating an auto junkyard on the premises. On January 17,1968 a preliminary injunction. was granted by this court *907 (Farnham, J.) against the city enjoining it from taking any further action against the plaintiffs in enforcing City Ordinance 3215A pending the trial.
A trial was held on June 25 and 26, 1968 at which plaintiff Flax and other witnesses for the plaintiffs and for the city, including experts,. appeared and testified. After carefully reviewing this evidence, this court finds the following facts:
1. The plaintiffs are Victor Flax and Dominick Chard, together doing business under the assumed name of Copper City Scrap Company. Their business is located in the southeastern or inner section of the City of Borne in an area close to the New York State Barge Canal.
2. There are other businesses located in the immediate area of the plaintiffs’ business, representative of which are, Borne Iron Mills, Nolan-Hayes Fuel Company, Glo-Gas Propane Gas Company, Parry-Fox Fuels and Prossner & Sons.
3. These firms create a high level of noise due to the nature of their business.
4. There are a number of residences in the area, all of which were present at the time Copper City Scrap Company commenced its business.
5. No new homes or industries have moved into the area subsequent to the time when the plaintiffs commenced their auto scrap business.
6. The plaintiffs’ property, consisting of two parcels which are separated by Louisa Street, comprises approximately one acre of land bounded by Jane Street on the north and Davis Avenue on the south.
7. Since purchasing the property plaintiffs have fenced in this property and have deposited hard fill there as well as resurfacing approximately 75% of the area with concrete. There are present on the property two buildings, both of wood construction, one of which serves as an office and the other of which serves as a warehouse for parts.
8. If the setback prescribed by the City Ordinance 3215A is enforced on all sides of the property there will remain only 4.6% of the land available for use in the conduct of the plaintiffs’ business, which is insufficient to continue the existing business. If the setback is enforced on all sides except the side fronting on the New York State Barge Canal, there would remain available 22.7% (6,900 square feet) of land to be used by plaintiffs.
9. The plaintiffs’ land is not suitable for residential use and there is insufficient traffic generated there to make it profitable for any retail stores or a shopping center.
*908 10. The premises lie so close to the New York State Barge Canal that they would not, under presently existing conditions, be a desirable area for new residences to be built.
11. The land may have a possible use for industrial or business purposes presently established there, for example, fuel storage, cement storage, the products of which are transported on the Barge Canal, although the value of the premises would be affected by its small size. Insofar as the expansion of other existing businesses in the area to include this property is concerned, there are existing residences between the plaintiffs’ land and these other businesses.
12. No one has ever offered to buy the plaintiffs’ land for any purpose. However, there is no evidence that it has ever been offered for sale or that any effort has ever been made to sell it for any purpose.
13. The premises have no city water or sewer services. These services are located a distance of approximately 200 yards from the plaintiffs’ office. Plaintiffs have never asked to have these services extended.
14. There is a new area set aside and zoned specifically for the conduct of junk businesses similar to the plaintiffs’ in the City of Rome. However, none of the presently established junk businesses in this newly zoned area moved into the area from previous locations. All of them originated in the new area. This newly zoned area has been set aside on the Tannery Road in the outer section of Rome on a large parcel designated ‘ ‘ S-S ’ ’ which is an area on which the salvage and auto junkyard business, similar to that conducted by the plaintiffs, may be conducted.
15. The assessment on the plaintiffs’ land is $1,940 and the equalization rate of the City of Rome is 74%.
16. Several other unlicensed auto junkyards moved the junks off their premises within a period of from two weeks (approximately 120 auto junks) to less than one year (over 300 auto junks). The plaintiffs have on their premises an inventory of approximately 200 auto junks and this inventory stays about the same.
17. The plaintiffs’ property is located in an area zoned “ M-2 ”. Land immediately adjacent to the west is zoned “ R-5 ” (Residential).
Ordinance No. 3215A enacted by the Common Council of the City of Rome is patterned closely after the provisions set forth in section 136 of the General Municipal Law (L. 1965, ch. 1040, eff. Sept. 1, 1965) excepting that the setback provision for fencing is 50 feet (subd. 11) rather than 60 feet provided in the *909 municipal ordinance. It is to be noted, further, that subdivision 11 provides that the fencing requirements ‘ ‘ may be reduced by the legislative body ’ ’.
It is well settled that the regulation of junk yards is a valid exercise of the police power of the State. (Matter of Bologno v. O’Connell, 7 N Y 2d 155, 158 [1959].) However, a litigant may choose to mount a constitutional attack upon an ordinance without challenging the basic validity of the ordinance, claiming that the zoning ordinance is invalid only as applied to petitioner’s land. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222 [1938].) Ordinances enacted by duly constituted legislative bodies are ordinarily considered to be constitutional unless they can be shown to be arbitrary.
The burden of establishing such arbitrariness is imposed upon him who asserts it. (Rodgers v. Village of Tarrytown, 302 N. Y. 115 [1951].) A legislative act, presumed to be constitutional and valid, cannot be held unconstitutional merely because it deprives its owners of the most profitable use to which his land may be put, nor is it to be considered unconstitutional simply because it reduces the value of petitioner’s land. The pecuniary profits of the individual owner are considered to be subordinate to the public welfare. (Palmer v. Furman, 283 App. Div. 664 [2d Dept., 1954].) However, a zoning ordinance which deprives a land owner of the entire use value of his property is unconstitutional. When an ordinance goes so far as to preclude the use of the property for any purposes for which it is reasonably adapted it is confiscatory and must be held unconstitutional. (Summers v. City of Glen Cove, 17 N Y 2d 307, 309 [1966].)
In order to afford stability to property owners who have been occupying their premises under existing nonconforming uses, the courts have imposed the test of reasonableness upon the exercise of police powers by the municipalities in the enactment of their ordinances. (Town of Somers v. Comarco, 308 N. Y. 537, 540-541 [1955].) The enforcement of a zoning regulation against a prior nonconforming use will be sustained if the resulting loss to the owner is relatively slight and unsubstantial. (People v. Miller, 304 N. Y. 105, 108 [1952].) The broad, general rule set forth in People v. Miller (supra) must be considered within the context of the test of reasonableness. ‘ ‘ ‘ The extent of the reasonable exercise of the police powers varies directly with the degree of the density of the population in the city * * * involved’”. (Matter of Dolomite Prods. Co. v. Kipers, 23 A D 2d 339, 342 [4th Dept., 1965]; affd. 19 N Y 2d 739 [1967].)
*910 The evidence here clearly establishes that enforcement of the 60-foot setback restriction entirely eliminates the use by plaintiffs of their property as an automobile junkyard which nonconforming use they had previously enjoyed. This in and of itself would be a mere showing of hardship not confiscation. (Mary Chess, Inc. v. City of Glen Cove, 18 N Y 2d 205, 210 [1966].) However, the property because of its proximity to the New York State Barge Canal, is not suitable for the construction of residential dwellings; because of. its location there is not sufficient traffic for it to be feasible for use as a shopping center or other commercial enterprise. It is located in an area zoned M-2 for manufacturing but because of its small size, it is not feasible to be developed for manufacturing purposes. The expansion of existing businesses in the area to incorporate and connect those premises with the plaintiffs’ property appears to be unfeasible due to the presence of residence between the plaintiffs’ property and the presently existing businesses. Thus the property cannot be used for residential, commercial or manufacturing purposes. The enforcement of the setback restrictions amounts to a confiscation of the plaintiffs’ property and hence is unconstitutional as applied to these premises. Further, the tests set forth in People v. Miller (supra) and Town of Somers v. Camarco (supra) would indicate that the exercise of its police powers by the City of Borne in this very sparsely settled area under the conditions existing there was unreasonable and confiscatory. The economic loss upon the plaintiffs cannot be considered to be “ slight and insubstantial ” (People v. Miller, supra, p. 108).
Nevertheless, the ordinance itself provides that the setback and fencing requirements in section 10 may be reduced by the Common Council. It would appear to this court that the plaintiffs should erect suitable fencing on their property lines (including the side facing the State Barge Canal) which the Common Council could, if it was so advised, require the plaintiffs to do in any event; or, in lieu of erecting such a fence, grant to the plaintiffs a reasonable period of time to remove their auto junks to the newly zoned S-S area in the outer section of the City of Borne, granting to them an opportunity to amortize their investment and make future plans. It would appear that an 18-month amortization period in which to move would be appropriate under the circumstances here.
While this court has held that the attempt to enforce the setback provision of Ordinance No. 3215A is unconstitutional and confiscatory as applied to the plaintiffs’ land; nevertheless, the court does not believe that a permanent injunction which *911 would prohibit the city from taking any action whatsoever in connection with this ordinance is appropriate.
An order should be submitted by the plaintiffs in accordance with the terms of this decision. The same should be submitted to the Corporation Counsel of the City of Borne, who should indicate his approval as to form by initialing the same.