FRED B. KRAVETZ et al., Appellants, v EDWARD B. PLENGE et al., Respondents.

Fourth Department, January 22, 1982

**APPEARANCES OF COUNSEL**

*A. Vincent Buzard* for appellants.

*Harris, Beach, Wilcox, Rubin & Levey* (*Karl S. Essler, William L. Dorr* and *Susan S. Robfogel* of counsel), for Edward B. Plenge and another, respondents.

*Louis N. Kash* (*Michael J. Looby* of counsel), for City of Rochester, respondent.

*Harter, Secrest & Emery* (*John Mahon* of counsel), for Marine Midland Bank, respondent.

OPINION OF THE COURT

MOULE, J.

The sole issue presented on this appeal is the validity of an amendment to the zoning ordinances of the City of Rochester.

In 1975, as part of a comprehensive revision of the Rochester zoning ordinances, the "H-4 Medium-High Density Historic District" (H-4 District) was established (Code of City of Rochester, § 115-75). The stated intent of the section was to "promote, maintain and enhance historic medium to high density residential neighborhoods located within a Preservation District" (Code of the City of Rochester, § 115-75, subd A). Specialized standards and requirements were enacted to regulate new construction so that it would be compatible with existing structures and in support of the area character.

To promote the retention of existing structures, the H-4 District allowed specially permitted uses and adaptive uses for existing buildings. Adaptive uses allow up to 100% of the floor area of existing buildings, with a three-tenths ratio of floor area to occupied land, to be converted to business and professional offices, nonretail business artist studios, and medical and dental offices. Special permit uses include residential care facilities, day-care centers, schools and community centers. There are two H-4 Districts in the city: the Western District, consisting of property fronting East Avenue between Prince Street and Merriman Street, and the Eastern District, comprised of lots fronting East Avenue between 1400 East Avenue and Probert Street on the north and Hawthorne Street and Colby Street on the south.

The property in issue is located at 550 East Avenue in the Western H-4 District. Originally constructed in 1973

as a 112-unit luxury apartment building for senior citizens, the facility went bankrupt prior to opening and had remained vacant since construction. Structures in the vicinity of 550 East Avenue include a private high-rise apartment, several small apartment buildings, health organization offices, union offices, a nursery school, churches, museums, a social club and headquarters for community service organizations.

Defendant Marine Midland Bank heads a group of banks which acquired the property in mortgage foreclosure. In 1977 this group approached city officials with a proposal to use the vacant building at 550 East Avenue as a hotel. At that time various alternatives for permitting hotel use at the property were developed but no further action was taken.

In 1979 defendants Edward B. Plenge and William L. Sullivan (Plenge and Sullivan) contracted to purchase the property at 550 East Avenue and contacted the Bureau of Planning and Zoning (Bureau) concerning conversion of the site to hotel use. On June 4, 1979, following meetings between the parties over potential use of the site, Plenge and Sullivan submitted an application for an amendment to section 115-75 of the Code of the City of Rochester to the Bureau. The proposed amendment permitted hotels to be established in existing structures located within the H-4 District subject to a special permit. It was determined that five properties, besides 550 East Avenue, would fall within the allowances of the amendment.

An informational hearing on the proposed amendment was conducted by the City Planning Commission (Code of City of Rochester, § 115-26, subd [D], par [3]) on June 13, 1979, at which parties in support of and opposed to the amendment presented their views. Following this hearing, the applicants submitted to the City Planning Commission changes in the proposed amendment, consisting of further restrictions in the establishment of a hotel, such as minimum allowances on the number of rooms and suites. These additional restrictions were prepared with the assistance of the Bureau, whose director stated the attempt was to exclude commercial and convention hotels from the area, and assure that any hotels developed on East Avenue

would be as compatible with the character of the area as possible. The position of the Bureau was that the proposed hotel use would be consistent with the comprehensive plan for development in the H-4 District, based on existing uses and the fact that an adaptive use provision already allowed for commercial uses.

On July 2, 1979 the City Planning Commission, in conjunction with the Rochester Preservation Board, within whose authority the H-4 Districts fall, held a second informational meeting. Following the meeting, both the Planning Commission and the Preservation Board passed resolutions recommending denial of the proposed amendment.

In accordance with statutory procedure (Code of City of Rochester, § 115-26, subd [D], par [5]), the City Council held a public hearing on the proposed amendment on September 11, 1979. The City Council had previously received a report of the Director of the Bureau of Buildings, sent by the City Manager, concluding that, due to the nature of the construction of 550 East Avenue, it would be difficult to convert to condominium use. The City Council also received a determination of the Bureau that the amendment would have no significant environmental impact and a statement of the Environmental Commission that luxury hotels were in keeping with the uses of the H-4 District. At the hearing, the City Council heard presentations by both sides to the amendment adoption.

On October 9, 1979 the City Council voted to adopt the amendment. In its complete form, the amendment (Code of City of Rochester, § 115-75, subd [F], par [2]) provides that special permit uses in the H-4 District will include:

"(2) [Added Oct. 9, 1979, Ordinance No. 79-549] Hotels in existing structures subject to the additional standards hereinafter set forth:

"(a) Lodging unit requirements. No special permit for conversion of an existing building for use as a hotel shall be issued unless, following such conversion:

"[1] The building contains no less than one hundred (100) lodging units;

"[2] The minimum size of lodging units within said building is no less than four hundred (400) square feet; and

"[3] No less than one-third (⅓) of the lodging units are suites, each comprised of no less than one (1) sitting room and no less than one (1) sleeping room, and are rented only as suites.

"(b) Access.

"[1] Ingress and egress to and from all lodging rooms and accessory commercial facilities shall be from inside the building and not directly from the street or from outside the building.

"[2] Public entry to the building shall be through a single lobby or office area which shall be supervised by a person in charge at all hours of the day and night.

"(c) Accessory uses.

"[1] Accessory uses may include newsstands; gift shops; laundry service facilities; beverage, dining and banquet facilities; recreational and health facilities; and other uses and services customarily available for the comfort and accommodation of guests. Accessory uses not included in the original application for establishing the principal use shall be subject to the issuance of a special permit.

"[2] If a restaurant is included as an accessory use, seating capacity shall be limited to a number equal to seventy-five percent (75%) of the number of lodging units in the building.

"[3] All accessory uses other than a restaurant shall be designed, arranged and located so as not to encourage patronage by persons other than guests of the hotel and their visitors. Pursuant to this provision, signs identifying or advertising the availability of such accessory uses shall not be permitted outside the building.

"(d) Parking.

"[1]   Notwithstanding any provision of § 115-75H, temporary parking of automobiles in front of the building shall be permitted for the purpose of discharging or picking up passengers and/or baggage and in connection with providing valet parking services to guests and visitors.

"[2]   Accessory uses limited to guests. If such use is limited to the guests of the hotel and their visitors and if the applicant demonstrates adequate means of so limiting the use, then no off-street parking in addition to that required for the principal use need be provided. A site plan review determination that such use is designed, arranged and located so as to encourage use by persons other than guests of the hotel and their visitors shall raise a rebuttable presumption that the applicant does not intend to limit the use to guests of the hotel and their visitors.

"[3]   Accessory uses not limited to guests. If such use is available to persons other than the guests of the hotel and their visitors, then off-street parking shall be provided as required by the regulations of § 115-90 applicable to the use, unless the Planning Commission shall find, on the basis of evidence presented to it, that some reduction of such requirement is warranted because the use is designed, arranged or located in such a fashion as to indicate that use by persons other than guests of the hotel and their visitors will be minimal."

Plaintiffs commenced this action in November of 1979, seeking a declaratory judgment declaring the amendment invalid and void, and a permanent injunction preventing the city from taking any action under the amendment and preventing defendants from maintaining or using 550 East Avenue as a hotel. In their complaint plaintiffs allege that the amendment is invalid as it was not designed to promote the public health, safety and general welfare in accordance with a well-considered plan and is, in essence, impermissible spot zoning.

A nonjury trial was held September 25 and 26, 1980. Following the trial, judgment was entered in favor of the defendants, the court determining in a well-reasoned opinion (BOOMER, J.) that plaintiffs failed to overcome the strong presumption of validity which attaches to the legislative determination of a municipality when it passes zoning ordinances. Plaintiffs appeal from such judgment.

The consideration in examining the challenged amendment is that zoning ordinances, like all legislative enactments, are invested with an exceedingly strong presumption of constitutionality; the challenger to the ordinance shoulders the very heavy burden of demonstrating unconstitutionality beyond a reasonable doubt, and only as a last resort should courts strike down legislation on this ground (*Town of Huntington v Park Shore Country Day Camp of Dix Hills,* 47 NY2d 61; *Marcus Assoc. v Town of Huntington,* 45 NY2d 501). A party who attacks a zoning ordinance must show that it is not justified under the police power by any reasonable interpretation of the facts (*Mary Chess, Inc. v City of Glen Cove,* 18 NY2d 205; *Shepard v Village of Skaneateles,* 300 NY 115). If the validity of a legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control (*Euclid v Ambler Co.,* 272 US 365; *Rodgers v Village of Tarrytown,* 302 NY 115; *Scannell v City of Dunkirk,* 9 AD2d 725).

Plaintiffs' over-all contention on appeal is that the amendment is invalid as an exercise of "spot zoning".

■ Spot zoning is the singling out of a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of the property and to the detriment of other owners (*Dauernheim, Inc. v Town Bd. of Town of Hempstead,* 33 NY2d 468; *Rodgers v Village of Tarrytown, supra*). Where the enacting authority acts in accordance with a comprehensive plan it will not be condemned as spot zoning, even though it singles out and affects but one lot or creates a small area in the center of a large zone devoted to a different use (*Thomas v Town of Bedford,* 11 NY2d 428; *Rodgers v Village of Tarrytown, supra*).

Generally, when a change of zone, a variance or a special permit is sought, there is a specific project sponsored by a

particular developer which is the subject of the application (*Matter of Dexter v Town Bd. of Town of Gates,* 36 NY2d 102). Error occurs, however, where zoning legislation is enacted to grant to a single owner a discriminatory benefit at the expense and detriment of his neighbors, without any public advantage or justification, rather than pursuant to a comprehensive plan for the welfare of the community (*Matter of Dexter v Town Bd. of Town of Gates, supra; Thomas v Town of Bedford, supra; Rodgers v Village of Tarrytown, supra*). A consideration in refuting a "spot zoning" claim is that other properties in the area benefit from the amendment (*Century Circuit v Ott,* 65 Misc 2d 250, affd 37 AD2d 1044).

█ There is no precise definition of the term "comprehensive plan", nor has the term been equated with any particular written document; a comprehensive plan is determined by examining all relevant evidence (*Udell v Haas,* 21 NY2d 463; *Blumberg v City of Yonkers,* 41 AD2d 300, app dsmd 32 NY2d 896). A comprehensive plan has as its underlying purpose the control of land uses for the benefit of the whole community based upon consideration of its problems and applying the enactment or a general policy to obtain a uniform result not enacted in a haphazard or piecemeal fashion (*Walus v Millington,* 49 Misc 2d 104, affd *sub nom. Walus v Gordon Realty Corp.,* 31 AD2d 777). In general, if a need is shown to exist for the betterment of the community and an enactment satisfies that need, such change may become part of a comprehensive and well-conceived plan (*Matter of Gilmer v Fritz,* 28 AD2d 804). A determining factor in deciding whether zoning is part of a comprehensive plan is whether forethought has been given to the community's land use problems (*Blumberg v City of Yonkers, supra*).

Enactments to change zoning plans should be analyzed in terms of consistency and rationality, with the requirement they not conflict with the fundamental land use policies and development plans of the community, keeping in mind that a comprehensive plan must be flexible and subject to some changes (*Blumberg v City of Yonkers, supra; Century Circuit v Ott, supra*). Changed conditions call for changed plans, and owners of property in a particu-

lar zone enjoy no eternally vested rights to its classification if the public interest demands otherwise (*Rodgers v Village of Tarrytown, supra,* at p 121). Although stability and regularity are essential to the operation of zoning plans, zoning is not static; the obligation is the support of comprehensive planning with recognition of the dynamics of change, not a slavish servitude to any particular plan (*Matter of Town of Bedford v Village of Mount Kisco,* 33 NY2d 178; *Thomas v Town of Bedford, supra*).

■ Plaintiffs failed to meet their burden of demonstrating unconstitutionality beyond a reasonable doubt to counter the strong presumption of validity accorded the amendment. In substance, their presentation established that property values in the vicinity of 550 East Avenue would be affected by the conversion to a hotel and that the amendment was proposed by individuals with a financial interest in its outcome. An expert opinion that surrounding property values would change should property use change, due to a zoning amendment, does not demonstrate how the amendment conflicts with an existing comprehensive plan. That an amendment was enacted through the impetus of one who would financially benefit by its enactment does not establish the result as impermissible spot zoning: defendants, as persons with a contractual interest in the property, are allowed to apply for amendments (Code of City of Rochester, § 115-26, subd [D]); there was no showing that the zoning legislation granted defendants a discriminatory benefit at the expense and detriment of their neighbors, without public advantage or justification; and five other properties in addition to 550 East Avenue could benefit from the amendment. At most, all that plaintiffs established was that the enactment of the amendment was fairly debatable, and in such an instance legislative judgment must be allowed to control.

Furthermore, the amendment resulted from a proper use of the process meant to be used as a tool to adjust the zoning provisions in light of changing, newly discovered or newly important conditions, situations or knowledge (Code of City of Rochester, § 115-26, subd [B]). The inability to readily convert 550 East Avenue into a use other than a luxury hotel, and the economic hardship which would be

caused thereby, emphasized the detrimental effect on the economic climate when such large buildings cannot be adjusted to changed conditions through an adaptive use provision. As the amendment restricts itself to existing buildings, and greatly limits the allowable exterior changes, the historic character of the district will be preserved.

Finally, plaintiffs' claim that the City Council adopted the amendment in a haphazard and piecemeal fashion was not supported. Not only was the attempt to switch the burden to the city to justify their actions improper, but it was also unsuccessful; adoption of the amendment came after investigations into uses for the structure, community needs, compatibility of the proposed use to the community character, and hearings at which interested parties were able to express both support and opposition. The strict terms and structuring of the amendment itself indicate the care that went into assuring that the allowed development of existing structures would continue to blend into the existing plan.

Accordingly, the order appealed from should be affirmed.

DILLON, P. J., SIMONS, HANCOCK, JR., and SCHNEPP, JJ., concur.

Order unanimously affirmed, without costs.