Howard T. Hogan, J.
This is a proceeding in eminent domain instituted by the County of Nassau to acquire real property for public structures and facilities on Washington Avenue in the Plainview area of the Town of Oyster Bay.
Title vested on August 19,1968.
The subject property is an 11.131-acre tract of unimproved, wooded, gently rolling land with a frontage of 250.09 feet on the easterly side of Washington Avenue. It is located approximately one quarter of a mile north of the Long Island Expressway, in a large quadrant of land which is bounded on the north by the Northern State Parkway, on the east by the Suffolk County border, on the south by the Long Island Expressway and on the west by Washington Avenue. The county has taken a large generally rectangular parcel containing 7.679 acres from the easterly end of the subject property, leaving 3.452 acres in an inverted “ L ” shape with the original frontage on Washington Avenue.
The subject property is zoned Residential B; one acre minimum plot size. It is the claimants’ contention, however, that the highest and best use for the property, both before and after the taking, is residential subdivision on one-quarter acre or 10,000 square-foot plots. They contend that there was a reasonable probability of a change in zoning either by action of the Town Board upon application of the owner or by action in the courts to have the zoning ordinance declared unconstitutional as it applied to the subject property. The petitioner, on the other hand, contends that there was no reasonable probability that the subject property would be rezoned and has valued the subject for one-acre residential use in accordance with the zoning in effect on the vesting date.
The real estate expert for each party has valued the subject as raw acreage. Each used the market data approach and examined sales of comparable properties, making adjustments in the *146 sales for differences between them and the subject in order to arrive at an estimate of value. The claimants ’ expert used sales of land zoned for one-acre residential use at the date of sale and sales of land zoned for quarter-acre or 10,000 square-foot residential use. He adjusted these sales for time, size, location and topography in order to relate them to the subject. He also made an adjustment to each sale to reflect the probability of a rezoning for the subject. The petitioner’s expert relied upon sales of land zoned for one- and two-acre residential use.
The claimants ’ expert found a before value of $417,412 based upon $37,500 per acre for 11.131 acres and an after value of $103,560 based upon $30,000 per acre for 3.452 acres. Of the $313,852 (rounded to $313,850) in damages, $287,962 represents the direct damages for 7.679 acres taken at $37,500 per acre and $25,890 represents severance damages to the remainder.
The petitioner’s appraiser found a before value of $155,395 based upon $13,750 per acre plus $2,344 for planting and landscaping and an after value of $41,250. The damages of $114,145 are comprised of $105,586 direct damages, $2,344 for planting and landscaping and $6,215 in severance damages. Both experts agreed that the remainder had suffered severance damages because of a loss of utility and reduction in number of possible building plots, directly attributable to the taking.
The court finds claimants’ one-acre sales more nearly comparable by virtue of proximity to the subject property.
The evidence demonstrates that the entire quadrant containing some 2,000 acres of which the subject property was a part had been zoned for one-acre residential use since 1953. By the date of vesting, a substantial portion of this land had been rezoned, piece by piece, to greater density uses including industrial.
Abutting the subject property to the east was a tract of industrially zoned land which had been given a commercial permit for shopping center use. On the north and contiguous to a major portion of the northerly boundary line of the subject property was a large tract of county-owned land to be developed as an active sportsmen’s park. Directly across Washington Avenue, to the west of the subject, was a Residential C zone with homes developed on one-quarter acre plots, and to the south of the subject was a tract of county-owned land which could be put to any use including storage yards or county garages.
The existence of this industrial, shopping center land abutting the subject on the east, and the proposed sportsmen’s park land contiguous on the north, which would have the level of activity and noise normally associated with such active park *147 use, precludes the development of the subject for restricted and exclusive one-acre residential development. The county land with unlimited uses to the south and the quarter-acre residential development directly across the street from the subject property further demonstrate that the general neighborhood is not conducive to residential development on one-acre plots.
The totality of the evidence confirms the testimony of the claimants’ zoning and planning expert who related the history of the restrictive zoning of this area in 1953 comprising in excess of 2,000 acres.
This was a common device to provide a ‘ ‘ land bank ’ ’ or holding operation used by suburban legislatures to insure a controlled and gradual development of land, but its relationship to the police power is highly questionable. Absent proof that this zoning of such a large area was in accordance with a comprehensive plan as prescribed by section 263 of the Town Law, it becomes suspect. Especially is this true where numerous changes for less restrictive uses were granted over the years.
While the effect of “ land bank ” zoning insures controlled and gradual development, it serves also another purpose in that it affords authorities vested with the power of condemnation the opportunity to acquire land at what may well be less than its true market value.
The underlying purpose of all zoning is to control land uses for the benefit of the whole community, but implicit in such a plan is that the amendments thereto be consistent — not piecemeal or haphazard. (Walus v. Millington, 49 Misc 2d 104; Thomas v. Town of Bedford, 15 A D 2d 573.)
In the court’s evaluation of these situations, it should not embrace insensitivity and indifference to the problem where there exists the feasibility of a less restricted use. The quantum of proof to establish the probability of rezoning is merely reasonable proof. This is a legitimate and effective means of protecting the interest of the condemnee whose land has been taken against his will, and the rationale thereof meets the requirements of the Constitution — both State and Federal. The court finds, therefore, that there was a reasonable probability of a zoning change for the subject from one-acre residential to greater density residential use such as one-quarter acre zoning. Nevertheless, the subject property must be .valued as zoned on the vesting date with an increment or premium allowed for the probability of the zoning change.
Such prospective change in zoning is a relevant consideration in determining the market value of the subject property and *148 must be accorded such weight as the imminence and probability of the change permits. The court finds that an enhancement factor of 30% should be applied to the value found for one-acre residentiary zoned property. The court further finds that the value per acre for property zoned for one-acre residential use is $20,000 and, as enhanced for the probability of rezoning, $26,000 per acre.
The value of the subject property before the taking is $289,406. The court adopts claimants’ estimate of severance damages, for loss of utility, of 20% per acre. The value of the subject after the taking is found to be $20,800 per acre for 3.452 acres or $71,801.60. This results in total damages of $217,604.40, of which $199,654 represents direct damages at $26,000 per acre for the 7.679 acres taken, and $17,950.40 represents severance damages, as follows:
DAMAGE PARCEL EO. 4:
Direct
Land
7.679 acres at $26,000 per acre $199,654.00
Severance $ 17,950.40
Total $217,604.40
Bounded to $217,600.00
DAMAGE PARCEL EO. 3: $ 45,000.00
DAMAGE PARCEL EO. 6: $ 1.00